563 A.2d 945

**EAST ALLEGHENY COMMUNITY COUNCIL, a Pennsylvania non-profit corporation and Nicholas Kyriazi and Matthew Pavlicic, Appellants,**

**v.**

**The ZONING BOARD OF ADJUSTMENT OF the CITY OF PITTSBURGH and Schellhaas & Sons, Appellees.**

Commonwealth Court of Pennsylvania.

Argued May 4, 1989.

Decided Aug. 16, 1989.

392

John R. Axtell, Pittsburgh, for appellants.

William P. Bresnahan, Thomas R. Solomich, Rothman, Gordon, Foreman & Groudine, P.C., Charles H. Starret, Jr., Pittsburgh, for appellees, Schellhaas & Sons.

Before BARRY, and McGINLEY, JJ., and NARICK, Senior Judge.

McGINLEY, Judge.

East Allegheny Community Council (East Allegheny), Nicholas Kyriazi (Kyriazi), and Matthew Pavlicic (Pavlicic) (collectively, Appellants) appeal an order of the Court of Common Pleas of Allegheny County (court of common pleas) which affirmed the decision of the Zoning Board of Adjustment of the City of Pittsburgh (Board) granting the requested side yard and rear yard variances of Schellhaas & Sons (Schellhaas), owners of a funeral home in the 23rd ward of the City of Pittsburgh (City). We reverse.

On May 14, 1985, Schellhaas applied to the City's Zoning Administrator for a permit to occupy property at 619–623 Foreland Street, located in an R–4 Residential District and situated diagonally from Schellhaas' funeral home, located in a C–3 commercial zone. Schellhaas proposed to raze two existing unoccupied structures on the property and install a hard surface parking lot covering the entire site. The former parking lot for the funeral home had been condemned under the Pennsylvania Eminent Domain Code for expansion of Interstate 279. The Zoning Administrator disapproved Schellhaas' application because of its non-compliance with Sections 937.04(4) and (5) of the City of Pittsburgh Zoning Code (Code), which mandate side yards of twenty-five feet and a rear yard of thirty feet.

Schellhaas appealed to the Board seeking variances. After hearing on May 30, 1985, the Board granted the variances thereby authorizing the zero setbacks of the Schellhaas plan. Appellants appealed to the court of common pleas and Schellhaas intervened. Without receiving additional testimony, the court of common pleas affirmed the Board's decision finding that the literal enforcement of the Code would result in unnecessary hardship to Schellhaas, and that special conditions warrant the variances.[1] The court of common pleas found that Schellhaas established a unique or peculiar hardship specific to the property in question, as distinguished from a hardship arising from the impact of zoning regulations on an entire district under *Valley View*. (Opinion of the court of common pleas, August 18, 1988, at 3.) Appellants bring this appeal. The Board has filed a notice of non-participation.

Appellants argue that there is no unnecessary hardship to warrant the granting of the dimensional variances and that the Board had no authority to grant variances for a commercial parking lot under Section 937.05(c)(1) of the Code.[2] Appellants argue that Schellhaas' proper remedy was to seek a conditional use with the City Planning Commission

1. The court of common pleas applied *Valley View Civic Association v. Zoning Board of Adjustment,* 501 Pa. 550, 462 A.2d 637 (1983), and held that:

 The small size of the lot without the requested variance would preclude its use for any practical purpose by Schellhaas. In evaluating hardship the use of adjacent and surrounding land is unquestionably relevant. *Id.* at A.2d 640. It is not uncommon for buildings on the North Side of Pittsburgh to be situated in close proximity and without side yards and rear yards. The proposed community parking area would thus fit into the community and not detract from its nature.

 Opinion of the court of common pleas at 3.

2. Section 937.05(c)(1) provides:

 (c) Uses which are authorized by the Administrator in conformity with the provisions of Chapter 993.

 (1) Community garage or community parking area, used exclusively by residents of the neighborhood for the parking of noncommercial automobiles, unless otherwise excepted. (See Sections 989.-03(b)(2)(3).)

(Commission) pursuant to Section 937.05(a)(9) of the Code.[3]

Schellhaas argues that it has met its burden of proof for the granting of the dimensional variances; that Appellants have not preserved the issue of the Zoning Administrator's approval of the property as a community parking area and therefore Appellants cannot challenge the Board's grant of dimensional variances under Section 937.05(c)(1) of the Code or that the lot would be used for noncommercial purposes within that section.

■ Because no additional evidence was taken by the court of common pleas our scope of review is limited to determining whether the Board abused its discretion or committed an error of law. An appellate court can conclude that a zoning board abused its discretion only if its findings are not supported by substantial evidence. *Zoning Board of Adjustment v. Pasha,* 118 Pa. Commonwealth Ct. 190, 544 A.2d 1101 (1988).

■ Schellhaas sought dimensional variances from the side and rear yard setback requirements but did not seek a use variance. This is the crux of the Appellants' first argument: that the Board was without the authority to grant variances for a commercial parking lot in an R–4 Residential District under the Code. (*See* notes 2 and 3, herein.) Schellhaas argues that Appellants have not preserved the issue of the Board's lack of authority to grant variances for a commercial parking area in an R–4 residential zone because the only issues before the Board were the side yard and rear yard variances, and that Appellants did not file an appeal to the Board with regard to the decision by the Zoning Administrator to authorize a commu-

3. Section 937.05(a)(9) of the Code provides:
 (a) Conditional uses which are permitted after a public hearing and recommendation by the Commission, and after approval by Council in conformity with the provisions of Chapter 993.
 . . . .
 (9) Community parking area, to serve an abutting C or M District. (See Section 993.01(a)(4).

nity parking area in accordance with Section 937.05(c)(1) of the Code.[4] We disagree.

At hearing before the Board, Appellant Kyriazi testified that Appellants are trying to preserve the residential character of the neighborhood and that because the area is zoned R–4 residential, the parking lot should not be permitted because it will not be used for residential parking.[5] The following exchange took place between the Zoning Administrator, James P. Brown, the Chairman of the Board, Joseph Sabino Mistick, Esq., and R.D. Schellhaas:

CHAIRMAN MISTICK: Okay. Well, it's an unusual situation. [sic] Is the parking a permitted use for this— is this a special exception, a funeral home?

MR. BROWN: Two individual zoning lots. Now, the funeral home is in a C3 zoning lot and the parking lot proposed is in an R4 residential zoning lot. So, as a principal use, it would have to come as a community parking area. The condition is that consents of 60 per cent of owners within 200 feet be supplied and I think that is included in your record. Another condition is that

4. Schellhaas argues that the Zoning Administrator granted the proposed use as a funeral home parking lot, but denied Schellhaas' application regarding the dimensions of the proposed lot. (*See* Zoning Administrator's "Statement of Noncompliance with the Zoning Ordinance," Exhibit C.)

5. Kyriazi testified:

MR. KYRIAZI: Well, the East Allegheny Community Council supports our businesses. We do support our businesses and there are about 150 of them in the area. We are trying to work out the problems of parking. Of course, we have a problem with parking especially because of the East Street Valley Expressway and just because of the nature of the way businesses have developed over the—since they were created a hundred years ago or something. We are just now instituting a residential parking sticker program in the neighborhood to try to get rid of the day parking from downtown and from IBM and the hospital and this will free up a lot of parking for businesses....

....

Well, the feeling is that if this is an R4 zone and this is what zoning is supposed to protect, I believe that that is why zoning exists in the first place, and we would be very upset if this were granted. Notes of Testimony, May 30, 1985, (N.T.) at 4 and 6.

the parking be used exclusively by residents of the neighborhood for parking of non-commercial automobiles.

CHAIRMAN MISTICK: I guess the argument is that this business caters to. the neighborhood and generally the people using the parking lot would be from the neighborhood?

MR. SCHELLHAAS: Correct.

CHAIRMAN MISTICK: Is that the argument?

MR. BROWN: That is the argument.

CHAIRMAN MISTICK: I guess funeral homes are a pretty parochial business, in a sense, in that you deal with your general area?

MR. SCHELLHAAS: That's right.

MR. KYRIAZI: I was just going to say that if this is a neighborhood funeral home, serving neighbors, why would they need cars to get there?

N.T. at 3–4.

■ Appellants did not waive this issue before the Board and Schellhaas' argument that the Appellants should have taken an appeal from the Zoning Administrator's decision to the Board is equally without merit. Section 909.07 of the Code provides, in pertinent part:

Appeals from a decision of the Administrator or the Superintendent may be made to the Board by any aggrieved person or the head of any department of the City interested in the question involved. The Appellant shall file with the Administrator and with the Board, a notice of appeal specifying the grounds thereof.

The Appellants were neither "aggrieved persons" nor "the head of any department of the City interested in the question involved." *See Gibson v. Miller*, 265 Pa. Superior Court 597, 600, n. 1, 402 A.2d 1033, 1035, n. 1 (1979) (a party that prevails below is not aggrieved and therefore, lacks standing to appeal) and *Donegal Mutual Insurance Co. v. Eyler*, 360 Pa. Superior Court 89, 519 A.2d 1005 (1987) (a party may not appeal from a decision that is not adverse to it, even though it is a party to the action in which the

decision was rendered, and the requirement that a prospective appellant be aggrieved cannot be waived).[6]

The Zoning Administrator's notations on the Application for Occupancy Permit and/or Building Permit[7] for the subject property suggest that Schellhaas was granted permission to occupy the property under Section 937.05(c)(1) of the Code. (*See* Note 2.) The record indicates that the parking area would be used for Schellhaas' commercial hearses and limousines, and for its customers' cars, in violation of Section 937.05(c)(1). Section 937.05(a)(9) of the Code permits Pittsburgh City Council, after a public hearing and recommendation by the Commission, not the Zoning Administrator, to permit a "community parking area, to serve an abutting C or M District," as a conditional use. Schellhaas argues that because it caters to the neighborhood the lot would provide parking to those in the neighborhood of the North Side and therefore it is a "community parking area" within the restrictions of Section 937.05(c)(1). In its brief to this Court Schellhaas contends that the vehicles that would be parked in the proposed lot would be non-commercial. (Schellhaas' brief at 8.) Yet, before the Board Mr. Schellhaas emphasized the importance of the parking lot to the existence of the business. Schellhaas argues before this Court that the "new parking area is a necessary accessory to the funeral home" and that if the side and rear yard variances are not granted "Schellhaas will not have a parking lot which can adequately serve its business." (Schellhaas' brief at 12.)

 Schellhaas' proposed parking area, as a *principal use*, would have to be used "exclusively by residents of the

6. Schellhaas cites *Sojtori v. Douglass Township Board of Supervisors*, 6 Pa. Commonwealth Ct. 552, 296 A.2d 532 (1972) wherein our Court refused to address an issue raised by a property owner because the property owner failed to raise the issue before the Board. Our Court stated that the Board did not abuse its discretion or commit an error of law because it did not deal with, and could not deal with, an issue which was never presented to it. It is clear that Appellants raised the issue of the Zoning Administrator's approval of the parking lot before the Board. (*See* N.T. at 3–7.)

7. *See* Exhibit A of the Reproduced Record at 2a.

neighborhood for the parking of noncommercial vehicles." Section 937.05(c)(1) of the Code. The proposed parking area, as a *conditional use*, would be permitted after a public hearing and recommendation by the Commission, and after approval by Council, and contains no such restrictions on its use. Section 937.05(a)(9). The Board erred as a matter of law and its finding that the proposed parking area would be used as a community parking area within Section 937.05(c)(1) is not supported by substantial evidence.

Were we to accept Schellhaas' waiver argument and conclude that the Appellants did not preserve the first issue, we would conclude that Schellhaas did not satisfy the burden of proof required by the Code for the grant of the dimensional variances. Section 909.5 of the Code provides, in pertinent part:

(a) Upon appeal from a decision of the Administrator in accordance with the provisions of this Zoning Ordinance and the rules of procedure of the Board, the Board shall have the power to vary or adjust the strict application of the requirements of this Zoning Ordinance for only a use permitted in a district where the lot is located, in the case of an exceptionally irregular, narrow, shallow or steep lot or other exceptional physical condition not provided for in the district regulations or as a special exception, where strict application would result in practical difficulty or unnecessary hardship that would deprive the owner of the reasonable use of the land or structures involved, but in no other case. No variance in the strict application of any provisions of this Zoning Ordinance shall be granted by the Board unless it finds:

(1) That there are special circumstances or conditions, fully described in the findings of the Board, applying to the land or structure for which the variance is sought, which circumstances or conditions:

A. Are peculiar to such land and or structure and do not apply generally to land or structures in the neighborhood. . . .

B. Are such that strict application of the provisions of this Zoning Ordinance would deprive the appellant of the reasonable use of such land or structure;

(2) That the variance to be granted by the Board is:

A. For a use permitted in the district;

B. One that will require the least modification of the prescribed regulation; and

C. The minimum variance that will accomplish this purpose; and

(3) That the granting of the variance shall:

A. Be in harmony with the general purposes and intent of Section 901.06;

B. Be in accordance with the general or specific rules herein contained; and

C. Be not injurious to the neighborhoods, or otherwise detrimental to the welfare of the people at large.[8]

Schellhaas argues that, in accordance with Section 909.05 of the Code: *special conditions* exist to warrant the grant of the variances; *unnecessary hardship* will be incurred if the variances are denied; the variances are not contrary to the *public interest;* and, that the granting of the variances is in accord with the *spirit of the Code.* Schellhaas also maintains that the variances must be granted because they are de minimis.

This Court in *Tucker v. Zoning Board of Adjustment,* 62 Pa. Commonwealth Ct. 615, 437 A.2d 499 (1981) interpreted this provision of the Code and stated the test for the granting of a variance as "whether the land or or structure is capable of being used in a reasonable manner which is consistent with the applicable zoning provisions. If not,

---

**8.** This Code section parallels Section 7 of the Act of March 31, 1927 (Act), P.L. 98, *as amended,* 53 P.S. § 25057, which provides that the Board has the power:

3. To authorize upon appeal, in specific cases such variance from the terms of the ordinance as will not be contrary to the *public interest,* where, owing to *special conditions,* a literal enforcement of the provisions of the ordinance will result in *unnecessary hardship* and so that the *spirit of the ordinance* shall be observed and substantial justice done. (Emphasis added.)

then an undue hardship exists which the Board has the power to remedy by granting a variance." *Id.,* 62 Pa. Commonwealth Ct. at 618, 437 A.2d at 501. In *Tucker,* the Court reversed the trial court's affirmance of the Board's grant of a dimensional variance because "based upon the entire record, the Board could not find special circumstances and conditions peculiar to the land or structure which deprive the owners of the reasonable use of their land." *Tucker,* 62 Pa. Commonwealth Ct. at 619, 437 A.2d at 501. (*See also McClintock v. Zoning Hearing Board of Fairview Borough,* 118 Pa. Commonwealth Ct. 448, 545 A.2d 470 (1988)).

Appellants argue that Schellhaas offered no evidence of special circumstances or conditions peculiar to the property; that the subject property may be used for several different uses within the Code's requirements of permitted uses in an R–4 Residential District including a one-family dwelling and a two-family dwelling and that Schellhaas has not attempted to utilize the property for such uses. Schellhaas explains that its funeral home has been serving the North Side since 1868 and that because its parking area was taken in an eminent domain proceeding, the new parking area is a necessary accessory to the funeral home and that due to the small size of the lot, if the variances are not granted and the setbacks are required, the parking area will only hold a few cars. Schellhaas also alleges that without the proposed parking area it will not be able to stay in business.

In *Tucker,* the owners of a two-story carriage house applied for a dimensional variance so that they could enlarge the carriage house and turn it into a single-family residence. The planned addition would not comply with the applicable front, rear, and side yard requirements or lot area restrictions. This Court reversed the grant of the dimensional variances because the owners did not introduce evidence that the property in its entirety was incapable of being used as a single-family residence—the use for which it was presently zoned. In the matter *sub judice,* Schellhaas offered no evidence that the property in its entirety was incapable of being used for the use for which it was

presently zoned.[9] Schellhaas merely alleged the lot was physically too small for a parking lot given the setback requirements.

■ Appellants next argue that the difficulties of Schellhaas amount to an economic hardship only, and, taken alone, this is insufficient to establish an unnecessary hardship under *Valley View*. In *Valley View*, the property owner requested a variance in order to convert a three-story house to a takeout food shop in a residential district. Our state Supreme Court found unnecessary hardship because the residentially zoned property was surrounded by numerous incompatible commercial uses, rendering it unusable for residential purposes. Schellhaas argues that the use of the adjacent and surrounding land is relevant and, as the court of common pleas recognized, it is not uncommon for buildings on the North side to be situated in close proximity without side and rear yards. (*See* opinion of the court of common pleas at 3.)

**9.** Section 937.02 of the Code provides in relevant part:
(a) In the R4 Multiple-family Residence District land and structures may be used, and structures may be erected, altered or enlarged, for only the uses listed in this section and in Section 937.05. Permitted uses are:
(1) Multiple-family dwelling other than a row dwelling, Class B.
(2) Row dwelling, Class A.
(3) One-family dwelling.
(4) Two-family dwelling.
(5) Day nursery or kindergarten.
(6) Golf course, except driving tee or range, miniature course or similar use.
(7) Home for nurses.
(8) Library, public. (See Section 981.05.)
(9) Museum, public or nonprofit.
(10) Nursing home, provided it is licensed by the Commonwealth and complies with all governmental regulations applicable thereto.
(11) Recreation area, public. (See Section 981.05.)
. . . .
(13) Accessory use and structure customarily incident to any of the above uses, located within the buildable area of the lot, unless otherwise specified, not involving retail sales, or advertising of sales, on the premises, and including:
. . . .
F. Minor parking area used exclusively for the parking of noncommercial automobiles, as prescribed in Section 989.03(a).

In *Pennsylvania Parking, Inc. v. Zoning Board of Adjustment*, 99 Pa. Commonwealth Ct. 512, 514 A.2d 213 (1986) this Court found that the owners of residentially zoned property had failed to establish unnecessary hardship unique to the property sufficient to warrant the granting of a variance for a public parking lot where the owner merely asserted an attempt to sell or lease the property, but only received offers involving commercial uses, without evidence of active, prolonged, and specific testing of the property's financial and marketing problems. The Court found that the owners did not demonstrate that the R–10 zoning of property precluded a reasonable use under *Alfano v. Zoning Hearing Board of Marple Township*, 14 Pa. Commonwealth Ct. 334, 324 A.2d 851 (1974). The *Pennsylvania Parking* Court applied the *Valley View* standard that an unnecessary hardship may be found where a residentially zoned property is surrounded by numerous incompatible commercial uses, rendering it of little value for residential purposes. Schellhaas' evidence failed to demonstrate an unnecessary hardship of this nature.

Finally, on the issue of unnecessary hardship, in *Botula v. Zoning Board of Adjustment of Pittsburgh*, 69 Pa. Commonwealth Ct. 164, 450 A.2d 316 (1982) this Court reversed a court's order granting a variance sought by the owner of a two and one-half story building to continue to operate the building as a six-unit multiple family dwelling. The Court found in *Botula* that the hardship that would accrue to the owner if the variance was denied was economic, and reiterated this Court's prior holding that economic hardship does not justify the grant of a variance. Schellhaas complains that if the variances it seeks are not granted it will not be able to stay in business. However, this is unsubstantiated by the record, and in any event, insufficient to justify the grant of a variance. The applicant for a variance has the burden of proving that the variance will not be contrary to the public interest *and* that unnecessary hardship will result if it is denied. *Botula; Sisko v. Zoning Board of Adjustment of Pittsburgh*, 36 Pa. Commonwealth

Ct. 556, 389 A.2d 231 (1978). Even if we were to accept Schellhaas' arguments that the variances are not contrary to the public interest and in accord with the spirit of the Code, we cannot affirm the grant of the variances because there has been no showing of the requisite unnecessary hardship.

■ Schellhaas argues that if it is found that it has not established the traditional grounds for the grant of the variances, the Board's decision should be affirmed because de minimis variances may be granted wherein the proposed dimensional variance is minor and where no benefit to the public will accrue from requiring strict compliance with the Code. *Pyzdrowski v. Board of Adjustment of City of Pittsburgh*, 437 Pa. 481, 263 A.2d 426 (1970). Schellhaas notes that both the Board and the court of common pleas found that the variances in this matter were minimal.[10] Schellhaas argues the variance will not be contrary to the public interest because: 1) fifteen property owners, representing forty lots, signed consent forms; 2) the variance will not change the character of the neighborhood because the parking lot will be located diagonally from the funeral home and the previous parking lot was located beside the funeral home; 3) the parking lot will mean less traffic and inconvenience to the neighborhood; and, 4) the razing of the unoccupied structure for the parking lot is in the public interest because of the structure's poor condition.

10. The Board stated in its opinion:
 The Board has considered all testimony in the instant case and is of the opinion that occupancy of the subject property as a 12–stall community parking area for a funeral home located at 707 East Street will not be detrimental to adjacent or abutting properties or to the neighborhood in general. The Board is further of the opinion that the variances involved in this case are considered to be minimal in this particular neighborhood.
 Opinion of the Board, July 18, 1985, at 2.
 The court of common pleas found: "The Court also concurs with the Board that the variances involved in this case are minimal for this particular neighborhood. The effect upon the public interest of a lot size restriction is generally less than the effect of a use variance. *Pyzdrowski, Supra.*" Opinion of the court of common pleas at 4.

Appellants refute the Board's finding that the variances are minimal and argue that because the variances call for the complete elimination of the required twenty-five foot side yards and thirty foot rear yard, they are substantial, and therefore the grant of a de minimis variance is unwarranted. Schellhaas argues that the Board's finding should not be disturbed on appeal because the decision of whether to grant a de minimis variance is one best decided by the Board in accordance with *Pyzdrowski* and *West Bradford Township v. Evans,* 35 Pa. Commonwealth Ct. 167, 384 A.2d 1382 (1978).

In *Pyzdrowski,* our Supreme Court found that the Board committed neither an error of law nor abused its discretion in the granting of a 7/10 of a foot side yard variance because the spirit of the law was observed by permitting only a minimal deviation from the side yard requirements. In subsequent cases this Court has applied the doctrine of the de minimis variance only where minor deviations from dimensional zoning ordinances have been the basis for the variance.[11] In *Heilman,* this Court held that a variance of five feet from an eight-foot setback requirement was not a de minimis variation absolving the owner from establishing the traditional criteria for granting a variance. In the matter *sub judice,* Schellhaas is requesting variances from the twenty-five foot side yard and thirty foot rear yard setback requirements to no setbacks whatsoever. In light of *Pyzdrowski* and its progeny, the Schellhaas' variances are not de minimis.

Significantly, we note that in *Burroughs* and in *Rollins,* this Court distinguished between the use variance and the dimensional variance in applying the de minimis rules:

"The doctrine has exclusively been applied in cases where only minor deviations from dimensional zoning

11. *See for example: Application of Burroughs Corporation,* 54 Pa. Commonwealth Ct. 514, 422 A.2d 1183 (1980); *Ramondo v. Zoning Board of Haverford Township,* 61 Pa. Commonwealth Ct. 242, 434 A.2d 204 (1981); *Heilman v. Zoning Board of Adjustment of Philadelphia County,* 69 Pa. Commonwealth Ct. 157, 450 A.2d 318 (1982); *Rollins Outdoor Advertising v. Zoning Board of Adjustment,* 108 Pa. Commonwealth Ct. 277, 529 A.2d 99 (1987).

ordinances have been the basis for the variances sought. Because the crucial fact in this case is that Rollins' sign encroaches into the 75 foot buffer zone created by Section 14–303(2)(r)(.3) by only two feet it may initially appear that this is a *dimensional* variance case to which the de minimis rules apply. However, the variance being sought here is more accurately characterized as a *use* variance, *i.e.*, Rollins has requested that the Board permit its sign to remain in the buffer zone where it is a non-permitted use.

'There is no precedent, however, for approving a *use* variance based on the "de minimis" approach.' *Kensington South v. Zoning Board of Adjustment of Philadelphia*, 80 Pa. Commonwealth Ct. 546, 550, 471 A.2d 1317, 1319 (1984), *citing Application of Burroughs Corp.*, 54 Pa. Commonwealth Ct. 514, 422 A.2d 1183 (1980). Further, Rollins has not presented an argument to convince us that the de minimis doctrine *is* properly applied in *use* variance cases. In *Cook v. Zoning Hearing Board of Ridley Township*, 47 Pa. Commonwealth Ct. 160, 408 A.2d 1157, 1159 (1979), we stated that, 'we agree with a notable authority in the field that "... it is difficult to conceive of a use variance which would be truly 'de minimis' "' *citing* Ryan, Pennsylvania Zoning Law and Practice, Section 6.3.1 (Supp.1979)." (Emphasis in original.)

*Rollins*, 108 Pa. Commonwealth Ct. at 284–285, 529 A.2d at 103.

The Board's finding that Schellhaas has met its burden of proof for the grant of the dimensional variances is unsupported by substantial evidence. Accordingly, we reverse the order of the court of common pleas.

## ORDER

AND NOW, this 16th day of August, 1989, the order of the Court of Common Pleas of Allegheny County dated August 18, 1988, at Docket No. SA 1383 of 1985, is hereby reversed.