**Raymond J. EVANS and Barbara Evans, Appellants,**

v.

**ZONING HEARING BOARD OF THE BOROUGH OF SPRING CITY and Borough of Spring City.**

Commonwealth Court of Pennsylvania.

Argued March 12, 1999.

Decided June 21, 1999.

James S. Tupitza, West Chester, for appellants.

Robert M. Romain, Valley Forge, for appellee, Borough of Spring City.

Before DOYLE, J., SMITH, J., and MIRARCHI, Jr., Senior Judge.

MIRARCHI, Jr., Senior Judge.

Raymond J. Evans and Barbara Evans appeal from an order of the Court of Common Pleas of Chester County which affirmed the decision of the Zoning Hearing Board of the Borough of Spring City (Board) (1) affirming the enforcement notice issued by the Borough of Spring City (Borough) against the Evans; (2) rejecting the interpretation of the zoning ordinance (Ordinance) urged by the Evans (3) denying the application for a variance from the zoning requirements; and (4) denying the request for "a reasonable accommodation" for their handicapped daughter pursuant to the Fair Housing Amendments Act of 1988 (FHAA), 42 U.S.C. §§ 3601—3631. We affirm.

I.

The relevant facts found by the Board are undisputed. In 1960, the Evans acquired the subject property which contained a semi-detached single-family dwelling. On April 11, 1991, the Evans applied for a building permit to construct a detached 40′ × 24′ × 15′ accessory building to be used for parking and storage at an estimated cost of $1600. In the application, the Evans listed themselves as a contractor for the construction. At that time, Raymond Evans owned a carpentry business performing work on residential properties. The accessory building proposed in the application complied with all the zoning requirements, including the 5–foot minimum building setback applicable to an accessory structure for a single-family dwelling in the R–2 Medium Density Residential District where the property was then located. The property is currently located in the R–3 High Density Residential District.

After the Borough's approval of the application and before completion of the accessory building, the Evans' daughter,

Jennifer Goehring, was diagnosed in 1993 as suffering from agoraphobia and mitral prolapse, a condition described by her physician as abnormal fear of going places and being in public by herself. When she has a panic attack due to that condition, she lies on the floor shaking in a fetal position. Jennifer was married and had a child.

The Evans then changed the construction plan and added a three-bedroom apartment above the accessory building without obtaining a proper permit from the Borough. The Evans connected public water and public sewer lines serving the main dwelling to the accessory building without obtaining approval of the municipal water and sewer authorities and without paying required connection and service fees. Raymond Evans himself did most of the construction work at the final cost of approximately $20,000. The height of the accessory building as constructed was 21 feet, 6 feet higher than the height approved by the Borough in 1991. The Evans never sought the Borough's inspection of the completed building nor did they obtain a certificate of occupancy and compliance required by the Ordinance and the terms of the 1991 building permit. After completion of the construction in 1993, the Evans' daughter, her husband and her child moved into the apartment above the accessory building.

In 1995, the Borough zoning officer notified the Evans that their construction of the apartment without approval and use of the accessory building as a dwelling violated the Ordinance. On appeal, the Board and the trial court upheld the zoning violation notice. In December 1996, the Borough zoning officer issued a second enforcement notice against the Evans, stating that their continued use of the accessory building for a dwelling was in violation of the Ordinance. The Evans then appealed the enforcement notice to the Board and sought interpretation that their proposed construction of an enclosed 50–foot breezeway connecting the main single-family dwelling and the accessory building containing the apartment would create a two-family dwelling on the lot permitted by right in the R–2 and R–3 zoning districts.

The Evans also requested a variance from the 25–foot or 20–foot minimum rear yard requirement applicable to a two-family dwelling in the R–2 or R–3 zoning district, respectively. Sections 502.B and 602.B of the Ordinance. Finally, the Evans requested that the Borough waive the zoning requirements and allow their daughter and her family to live in the apartment above the accessory building as a reasonable accommodation for a handicapped person under the FHAA.

■ The Board concluded that the use of the accessory building for a dwelling was not permitted under the Ordinance; the two separate free-standing dwellings in a residential lot are not permitted either by right or by a special exception; the proposed construction of a breezeway connecting the two separate dwellings would not create one two-family dwelling permitted by the Ordinance; and the Evans failed to establish entitlement to a variance. The Board accordingly affirmed the enforcement notice, rejected the interpretation of the Ordinance urged by the Evans and denied the application for a variance. On appeal, the trial court affirmed the Board's decision.[1]

## II.

Under Sections 501.A and 601.A of the Ordinance, which provide that a building may be erected or used by right for the purpose of, *inter alia*, a single-family dwelling or a two-family dwelling in a lot located in the R–2 and R–3 zoning district, only one single-family or two-family dwell-

1. This Court's scope of review in zoning cases, where, as here, the trial court did not take additional evidence, is limited to determining whether the Board committed an error of law or manifestly abused its discretion. *Teazers, Inc. v. Zoning Board of Adjustment of the City of Philadelphia*, 682 A.2d 856 (Pa. Cmwlth.1996).

ing is permitted in the Evans' lot. The Evans contend, however, that they are not required to obtain a use variance because the proposed construction of an enclosed 50–foot breezeway between the main single-family dwelling and the accessory building will create a two-family dwelling permitted by the Ordinance.

Section 201 of the Ordinance defines a "dwelling" as "[a] building or entirely self-contained portion of a building having complete housekeeping facilities with no enclosed space in common with another dwelling." The Ordinance classifies two types of "a two-family dwelling": (1) a semi-detached two-family dwelling and (2) a duplex two-family dwelling. "A semi-detached two-family dwelling" is defined as "a residential building containing two dwelling units, separated by a vertical party wall, each having independent outside access and open space on three sides." *Id.* "A duplex two-family dwelling" is "a residential building containing two dwelling units, separated by a horizontal party wall each having independent outside access and open space on all sides." *Id.*

In this matter, the accessory building containing the three-bedroom apartment is a detached structure and does not share a party wall with the main dwelling. Even with an enclosed 50–foot breezeway proposed by the Evans, the two dwellings still would not share a vertical party wall required for "a semi-detached two-family dwelling." Further, the placement of the proposed breezeway between the two buildings would not create "a duplex two-family dwelling" because the buildings would not share a horizontal party wall and because each building then would not have open space on all sides.

Simply, the Evans' assertion that a permitted two-family dwelling can be created by merely placing a breezeway between the two separate dwellings is not supported by the definition of "a semi-de-

tached two-family dwelling" and "a duplex two-family dwelling" under the Ordinance. With or without a breezeway, the main dwelling and the apartment above the accessory building are two separate single-family dwellings, not a two-family dwelling. The Board thus properly rejected the interpretation of the Ordinance urged by the Evans. The Evans were therefore required to obtain a use variance to maintain the two separate single-family dwellings on the lot.

Further, even assuming that the proposed construction of a breezeway would create a permitted two-family dwelling as the Evans assert, they must then obtain a dimensional variance because the accessory building has only a 5–foot building setback which does not comply with the 25–foot or 20–foot minimum rear yard requirement for a two-family dwelling in the R–2 or R–3 zoning district.

### III.

To establish entitlement to a variance, an applicant must prove all of the following: (1) the zoning ordinance imposes unnecessary hardship resulting from the unique physical circumstances or conditions of the property, as distinguished from hardship arising from the impact of the zoning regulation on the entire district; (2) because of such physical circumstances or conditions, there is no possibility that the property can be developed for a reasonable use in strict conformity with the zoning ordinance; (3) the alleged hardship is not self-inflicted; (4) the requested variance will not destroy the character of the neighborhood; and (5) the requested variance represents the least possible modification of the zoning ordinance. Section 910.2 of the Pennsylvania Municipalities Planning Code (MPC);[2] *Patullo v. Zoning Hearing Board of the Township of Middletown,* 701 A.2d 295 (Pa.Cmwlth.1997).

---

**2.** Act of July 31, 1968, P.L. 805, *as amended,* added by Section 89 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10910.2.

■ The applicant's burden is a heavy one, and the reason for granting a variance must be substantial, serious and compelling. *Valley View Civic Ass'n v. Zoning Board of Adjustment,* 501 Pa. 550, 462 A.2d 637 (1983). A variance should be granted sparingly and only under exceptional circumstances. *Appeal of Lester M. Prange, Inc.,* 166 Pa.Cmwlth. 626, 647 A.2d 279 (1994).

■ In this matter, the property had been used for a permitted single-family dwelling when the Evans constructed the apartment without obtaining a proper permit. Where, as here, the property has actually been used for a permitted purpose, the owner does not suffer unnecessary hardship required for granting a variance. *Miller v. Zoning Hearing Board of the Ross Township,* 167 Pa.Cmwlth. 194, 647 A.2d 966 (1994). Unnecessary hardship is established, only where it is shown that compliance with the zoning ordinance could render the property practically useless. *Ignelzi v. Zoning Board of Adjustment of the City of Pittsburgh,* 61 Pa. Cmwlth. 101, 433 A.2d 158 (1981).

■ Moreover, any hardship asserted by the Evans was self-inflicted when they deviated from the building permit and added the apartment to the accessory building. Further, the fact that the Evans spent $20,000 for the construction does not justify a grant of variance. It is well established that economic hardship is insufficient to establish unnecessary hardship. *McNally v. Bonner,* 165 Pa.Cmwlth. 186, 645 A.2d 287 (1994), *appeal denied,* 540 Pa. 585, 655 A.2d 516 (1995). There-fore, the Board's decision to deny the application for a variance from the use regulations and the dimensional requirement must be upheld.

The Evans argue, however, that the facts in this matter are similar to those in *Crawford Zoning Case,* 358 Pa. 636, 57 A.2d 862 (1948), in which the Pennsylvania Supreme Court reversed the denial of a variance from the dimensional requirements.[3]

In *Crawford,* the owner applied for a building permit to make certain interior alterations to the existing garage to convert it into a single-family detached dwelling. The garage had the rear yard of 8.5 feet and the side yards of 5.8 and 37 feet which did not meet the 25–foot minimum rear yard and 8–foot minimum side yard requirements for a single-family dwelling. The Supreme Court held that the zoning board abused its discretion in denying a variance, noting that to comply with the dimensional requirements, the owner would be required to move the lawfully existing structure with substantial costs and destroy six large trees on the yard.

■ The Evans' reliance on *Crawford* is misplaced. In *Crawford,* the only issue was the owner's entitlement to dimensional variances for the purpose of converting the preexisting nonconforming garage into a dwelling, not the right to use the garage as a dwelling.[4] In this matter, on the other hand, the second dwelling on the Evans' property fails to meet not only the dimensional requirement but also the use regulations prohibiting two separate single-family dwellings in a lot.[5]

---

3. The Evans also asserted that there would be no violation of the minimum rear yard requirement if the allegedly abandoned alley behind their property is included as part of the rear yard. However, the record does not reveal any evidence of the abandonment of the alley or their right to use the alley as their rear yard.

4. While both a use variance and a dimensional variance are controlled by the same principle, the effect on the public interest of a use variance usually is greater than the effect of a variance necessitated by only a minor deviation from a dimensional requirement. *Pyzdrowski v. Pittsburgh Board of Adjustment,* 437 Pa. 481, 263 A.2d 426 (1970).

5. Moreover, under Section 910.2(a)(5) of the MPC enacted in 1968, twenty years after the decision in *Crawford,* the applicant for a variance now must establish, *inter alia,* that the variance sought "will represent the minimum variance that will afford relief and will represent the least modification possible of the

Moreover, the owner in *Crawford*, unlike the Evans, sought approval of the city before converting the preexisting structure into a dwelling. In this matter, the Board found that Raymond Evans had been a carpenter for twenty-seven or twenty-eight years and owned the carpentry business doing work on the residential properties, which suggests that he was familiar with the permit requirement. Raymond Evans nonetheless deviated from the plan authorized by the building permit and added the three-bedroom apartment to the accessory building without seeking approval of the Borough. Even after the completion of the construction, he totally disregarded the terms of the 1991 building permit and failed to seek inspection of the accessory building and obtain the required certificate.

The facts in this matter are thus similar to those in *Phillips v. Griffiths*, 366 Pa. 468, 77 A.2d 375 (1951), in which the owner converted the coach house in the large estate into a private dwelling without obtaining a proper permit and later sought a variance from the use regulations and the minimum side yard requirement. In *Phillips*, the Supreme Court distinguished *Crawford* on the basis that the owner should not be permitted to use the coach house as a residence where doing so would result in condoning a deliberate violation of the zoning ordinance. *See also Stratford Arms, Inc. v. Zoning Board of Adjustment*, 429 Pa. 132, 239 A.2d 325 (1968) (the application for a variance should be denied where the hardship asserted by the

applicant results from his or her own willful violation of the zoning regulations). Thus, *Crawford* does not support the Evans' contention.

## IV.

Finally, the Evans contend that the Board should have waived the zoning requirements and granted a variance to permit their daughter and her family to remain in the apartment above the accessory building as "a reasonable accommodation" for a handicapped person mandated by the FHAA.

In 1988, Congress amended the Fair Housing Act and enacted the FHAA to expand the protection from discrimination in housing practices and grants to the handicapped. *Judy B. v. Borough of Tioga*, 889 F.Supp. 792 (M.D.Pa.1995). Section 3604(f)(1) of the FHAA, 42 U.S.C. § 3604(f)(1), provides that it is unlawful:

To discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of—

(A) that buyer or renter,

(B) a person residing in or intending to reside in that dwelling after it is sold, rented, or made available; or

(C) any person associated with that buyer or renter.

The Borough does not dispute that the Evans' daughter, Jennifer, who suffers from agoraphobia and mitral prolapse, is a "handicapped" person under the FHAA.[6]

---

regulation in issue." Under the doctrine of de minimis variance, a variance may be granted in very limited situations where the proposed *dimensional* deviations from the zoning requirement is relatively minor, and where the insistence in rigid compliance is not absolutely necessary to preserve the public policy to be obtained. *East Allegheny Community Council v. Zoning Board of Adjustment of the City of Pittsburgh*, 128 Pa.Cmwlth. 391, 563 A.2d 945 (1989).

The accessory building in question has only a 5–foot building setback which would not comply with the 25–foot or 20–foot minimum rear yard requirement for a two-family dwell-

ing, even assuming that the proposed breezeway may create a permitted two-family dwelling. Such substantial deviation cannot be characterized as de minimis under this Court's previous decisions. *See, e.g., Leonard v. Zoning Hearing Board of the City of Bethlehem*, 136 Pa.Cmwlth. 182, 583 A.2d 11 (1990), *appeal denied*, 529 Pa. 665, 604 A.2d 1032 (1991) (an approximately 6% deviation is not de minimis); *Andreucci v. Zoning Hearing Board of Lower Milford Township*, 104 Pa.Cmwlth. 223, 522 A.2d 107 (1987) (a 8% deviation cannot be considered de minimis).

**6.** The FHAA defines the term "handicap" as "(1) a physical or mental impairment which

■ The FHAA defines the term "discrimination" to include, *inter alia*, "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). The reasonable accommodation requirement under Section 3604(f)(3)(B) expresses two countervailing legislative concerns: (1) effectuation of the objectives of assisting the handicapped; and (2) the need to impose reasonable boundaries in accomplishing such objectives. *Hovsons, Inc. v. Township of Brick*, 89 F.3d 1096 (3rd Cir.1996).[7]

■ It is well established that municipal zoning ordinances are subject to the reasonable accommodation requirement of the FHAA. *Town of Huntington v. Huntington Branch, National Ass'n for the Advancement of Colored People*, 488 U.S. 15, 109 S.Ct. 276, 102 L.Ed.2d 180 (1988). Consequently, municipalities have an affirmative duty to make reasonable accommodations by changing, waiving or making exceptions in zoning rules, policies, practices or services, when such accommodations are necessary to afford the handicapped persons the same opportunity to use and enjoy a dwelling as those without disabilities. *Horizon House Developmental Services, Inc. v. Township of Upper Southampton*, 804 F.Supp. 683 (E.D.Pa. 1992), *aff'd*, 995 F.2d 217 (3rd Cir.1993). The municipality has the burden of establishing that the proposed accommodation was unreasonable and unnecessary to give the handicapped person an equal opportunity to housing. *Hovsons*.

■ A proposed accommodation is unreasonable, if it would (1) require a fundamental alteration in the nature of a program or in a zoning scheme, or (2) impose undue financial or administrative burden on the municipalities. *Southeastern Community College v. Davis*, 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979). The municipality may satisfy its burden of establishing that the proposed accommodation is unreasonable by demonstrating "that its actions furthered, in theory and practice, a legitimate, bona fide governmental interest and that no alternative would save the interest with less discriminatory effect." *Thornton v. City of Allegan*, 863 F.Supp. 504, 510 (W.D.Mi.1993).

To support the request for a reasonable accommodation, the Evans presented the testimony of Dr. John F. Freehafer, Jennifer's treating physician. Dr. Freehafer testified:

> The treatment can be a couple fold and one is the person understands that there's not something else physically going on that's causing the symptoms so that they connect it with the panic attacks. Two, any social support they have is of great importance. Talking someone down, helping them out, just consoling them for a period of time may be in some people all it takes to get them through these episodes and if those things fail, various medicines they use which we did in Jennifer's case.

May 27, 1997 Hearing, N.T., p. 9.

Dr. Freehafer further testified:

> Q. With respect to familiar surroundings, do you feel that the individual with her family, her immediate family, her children, her husband, do you feel that the fact that they reside in a very close proximity to her immediate family, her parents, ... do you feel that this has a major impact on her overall well-being

---

substantially limits one or more of such person's major life activities, (2) a record of having such an impairment, or (3) being regarded as having such an impairment, ...." 42 U.S.C. § 3602(h).

**7.** In construing the duty to make reasonable accommodations under Section 3604(f)(3)(B) of the FHAA, the federal courts have uniformly applied the standard developed under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, which prohibits discrimination against the handicapped in federally funded programs. *Bryant Woods Inn, Inc. v. Howard County*, 911 F.Supp. 918 (D.Md.1996).

**694**

or can you not determine that as an outcome of the way she progresses?

A. I think overall the fact her family's been close by, okay, has been to her benefit and has been, you know, helpful in her controlling this for the time I took care of her. It probably allowed her to get off the medicine for a period of time.

Q. When you say 'close by,' do you mean physically close by? I mean, can you be close by and I guess you working—your relationship without being physically close.by?

A. I don't think a telephone call would do.

. . . .

Q. So if she were living in some close proximity nearby, that's what you're really saying is important, not necessarily how close she has to live?

A. If she has the twin house next door?

Q. Right; or if she lives two houses away or across the street or down the street so somewhere close proximity?

A. Again, it's from the patient's viewpoint.

*Id.* at 19–20, 22–23.

Raymond Evans also testified as follows. Jennifer and her family initially lived with the Evans in the main dwelling on the property after she relocated from California and was later diagnosed as suffering from agoraphobia and mitral prolapse in 1993. When it became intolerable for the two families to live in the main dwelling with only three bedrooms, Jennifer's family moved into an apartment in Limerick Township, six or seven miles away. When she lived in Limerick Township, the Evans visited Jennifer and stayed overnight to comfort her. The Evans then decided to change the plan under the 1991 building permit and add the three-bedroom apartment above the accessory building. They wanted Jennifer to live as close as possible so that they could comfort her.

■■■ The FHAA was enacted to end the unnecessary exclusion of the handicapped persons from the mainstream of America, not to give handicapped persons a carte blanche permission to determine where and how they would live in disregard of the zoning requirements. *Hovsons.* As the Court stated in *Oxford House, Inc. v. City of Virginia Beach,* 825 F.Supp. 1251, 1261 (E.D.Va.1993), "Congress surely did not mandate a blanket waiver of all facially neutral zoning policies and rules, regardless of the facts." Nor does the FHAA require the municipalities to extend a preference to the handicapped or put them in a privileged position, as opposed to affording them an equal opportunity. *United States v. California Mobile Home Park Management Co.,* 29 F.3d 1413 (9th Cir.1994). Thus, under the FHAA the municipalities still retain the power to enforce zoning ordinances which are not unduly burdensome to the handicapped persons. *Thornton.*

■■■ In this matter, Jennifer's family lived in the main dwelling with her parents for some time after she developed the medical condition. Before deciding to change the construction plan and add the apartment to the accessory building, the Evans admittedly did not even seek expansion of the main dwelling, which could have been done in compliance with the Ordinance and at the same time would have met Jennifer's needs for living close to her parents. In addition, the Evans admitted that before deciding to construct the apartment, they did not even look for a possible housing for Jennifer's family in a close proximity to their home.

We conclude, therefore, that the record fails to demonstrate that the proposed accommodation was reasonable and necessary to afford Jennifer an "equal opportunity to use and enjoy a dwelling" under Section 3604(f)(3)(B). To require the Borough to waive the zoning requirements and grant a variance under the facts in this matter would result in extending a preference to Jennifer and putting her in a privileged position in relation to other residents in the Borough in the enforcement of the

Ordinance. Further, the proposed accommodation, if granted in the face of the Evans' total disregard of the zoning requirements, would undermine and fundamentally alter the Borough's zoning scheme.

The Evans nonetheless relies on *United States v. City of Philadelphia*, 838 F.Supp. 223 (E.D.Pa.1993), to support their contention that the requested accommodation was reasonable and necessary. In *City of Philadelphia*, Project H.O.M.E. acquired two preexisting nonconforming adjacent buildings to provide a shelter for the homeless who were mentally ill and/or recovering from substance abuse. Following the city's approval of the application for a zoning and use permit to allow the owner to convert the property to residential buildings, the objectors appealed to the zoning board asserting that one of the buildings did not meet the minimum rear yard requirement.[8]

While the objectors' appeal in the state proceeding was pending before the Pennsylvania Supreme Court, the United States and the potential residents in the proposed facilities filed actions in the federal district court, alleging that the city should permit the owner to substitute the side yard for the required rear yard as a reasonable accommodation for the potential handicapped residents pursuant to the FHAA. The city did not dispute the reasonableness of the proposed substitution, but argued that the proposed accommodation was not necessary because it had already issued the permit for the proposed shelter in the state proceeding. The Court concluded that granting the requested relief was necessary under Section 3604(f)(3)(B) because the owner could not go forward with its plan and finance the project due to the pending state litigation.

*City of Philadelphia* is factually distinguishable. In that case, the reasonableness of the proposed accommodation was not an issue. Moreover, this matter involves a dwelling which was newly constructed in violation of the zoning requirements, not a preexisting nonconforming building as in *City of Philadelphia*. Further, unlike *City of Philadelphia* and all other cases reviewed by this Court, the Evans failed to first seek approval of the proposed accommodation. Instead, they already had Jennifer's family move into the apartment constructed in violation of the zoning requirements and then asked the Borough to totally disregard their zoning violations and permit her family to remain in the apartment. Thus, the Evans' reliance on *City of Philadelphia* is misplaced.

Accordingly, the order of the trial court is affirmed.

## ORDER

AND NOW, this 21st day of June, 1999, the order of the Court of Common Pleas of Chester County in the above-captioned matter is affirmed.

---

8. Under the ordinance, the size of the required rear yard depended upon the number of families to be housed in the building. This Court subsequently upheld the board's issuance of the permit, concluding that each resident of the proposed facilities would not constitute a "family" and that the proposed use of the facilities therefore would not violate the rear yard requirement. *See Spring Garden Civic Ass'n v. Zoning Board of Adjustment of the City of Philadelphia*, 151 Pa.Cmwlth. 413, 617 A.2d 61 (1992), *appeal dismissed*, 538 Pa. 549, 649 A.2d 657 (1994). The owner did not raise the issue of a reasonable accommodation under the FHAA in the state proceeding.