561 A.2d 833

**Gregory R. CHRIN and Caryn M. Chrin, his wife, Appellants,**

v.

**The ZONING HEARING BOARD OF THE BOROUGH OF NAZARETH, Northampton County and Borough of Nazareth, Appellees.**

Commonwealth Court of Pennsylvania.

Argued April 7, 1989.

Decided June 27, 1989.

Raymond J. DeRaymond, Easton, for appellants.

Theodore R. Lewis, Coffin, Lewis and Walters, Easton, for appellee, Borough of Nazareth.

Before BARRY and PALLADINO, (P.), JJ., and BARBIERI, Senior Judge.

## OPINION

BARRY, Judge.

Gregory R. Chrin and Caryn M. Chrin (landowners) appeal from an order of the Court of Common Pleas of Northampton County dismissing their appeal from a decision of the Zoning Hearing Board of the Borough of Nazareth (the Board).

Landowners own an irregularly-shaped lot located in the Borough of Nazareth (Borough). It is zoned R–7 (Medium Density Residential). Situated on the property is a three-unit multi-family dwelling [1], a lawn shed, a playhouse and a

---

1. When the Borough's zoning ordinance was enacted, the multi-family dwelling was being used as a combination two-family dwelling/retail store—the latter use being one which is not permitted in an R–7 District under that ordinance. However, after having been granted

detached private garage which is the subject of this appeal.[2]

The landowners applied for a zoning permit in order to construct a two-story dwelling unit on top of the garage for their own use.[3] The zoning officer denied that application. Landowners appealed that decision to the Board. Following a hearing on the matter, the Board concluded that landowners needed variances from the zoning ordinance's prohibition against rear dwellings and from certain of its dimensional requirements and that they had failed to establish the required unnecessary hardship. Landowners next appealed to the Court of Common Pleas of Northampton County which, without taking additional testimony, affirmed the Board. This appeal then followed.

When a trial court takes no additional evidence, this Court's scope of review is limited to determining whether the Board has committed a manifest abuse of discretion or error of law. *Valley View Civic Association v. Zoning Board of Adjustment,* 501 Pa. 550, 462 A.2d 637 (1983). An abuse of discretion can be found only if the Board's findings are not supported by substantial evidence. *Id.*

■ Landowners first argue that the Board should have permitted the construction of the proposed dwelling unit because it constitutes expansion of the multi-family dwelling use, which, according to them, is legally nonconforming in an R–7 District. Section 55.1 of the zoning ordinance, however, provides that a multi-family dwelling is a permitted use in an R–7 District. Therefore, owners of such uses do not have a constitutionally protected right of natural

the necessary dimensional variances in March of 1986, the landowners converted the store into an additional dwelling unit.

2. In their brief, the landowners assert that, when the zoning ordinance was enacted, this structure was being used as a warehouse for the previously existing appliance store, as well as a garage. In reviewing the record in this matter, we find no evidence supporting this contention.

3. Building plans submitted by the landowners also show that a portion of the garage would be converted into a family room for the proposed dwelling unit. According to the husband-landowner's testimony, the remainder of the garage would be used by the landowners to park their own cars.

expansion. *Immordino v. Zoning Hearing Board of Morrisville Borough*, 65 Pa. Commonwealth Ct. 79, 441 A.2d 818 (1982).[4]

■ Landowners next argue that the proposed construction should have been permitted pursuant to the principles announced in *Yocum Zoning Case*, 393 Pa. 148, 141 A.2d 601 (1958) and *Grubb Appeal*, 395 Pa. 619, 151 A.2d 599 (1959). In both of those cases, landowners were permitted to expand legally nonconforming structures when the proposed expansion did not result in an increase in the dimensional nonconformities that existed when the zoning ordinance was enacted. We note, however, that the use of the structures being expanded in those cases did not change. The structure which was the focus of the appeal in *Yocum* remained a two-family dwelling while that in *Grubb* remained a multi-family dwelling. As will be seen in the following discussion, that fact is significant.

Section 55.4 of the zoning ordinance contains a table which establishes the dimensional requirements for R–7 Districts. The pertinent part of the table appears as follows:

| | Minimum Lot Area | Minimum Lot Width | Minimum bldg. coverage of lot | Maximum bldg. Height | Front Yard | Side Yard | Side abutting Street | Rear Yard |
|---|---|---|---|---|---|---|---|---|
| With Centralized Sewage Systems | | | | | | | | |
| Multi-family dwelling | 8,000 sq. ft. plus 5,000 sq. | 200' | 20% | 35' | 40' | 40' | 40' | 60' |

4. Appellants argue that they should be permitted to expand the nonconforming multi-family dwelling use over that portion of the subject property presently being used as the site of the garage because it can reasonably be concluded that the owners at the time of the enactment of the zoning ordinance intended to expand that use over that portion of the property. According to the landowners, such a conclusion can be reached in light of the facts that the garage, which was built prior to the enactment of the zoning ordinance, was designed with steel beams and extra depth to accomodate the construction of additional stories on top of it, and has a built-in flue, a capped sewer line and electrical service separate from the main building. As we have noted, however, a multi-family dwelling is not a nonconforming use in an R–7 District.

| | ft. per dwelling unit in minimum lot of 2 acres | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| All other permitted uses | 7,000 | 60′ | 30% | 35′ | 20′ | 10′ | 20′ | 30′ |

In addition to the above requirements, Section 71.2(1) of the zoning ordinance provides that no accessory building shall be constructed within five feet of any rear lot line or within a front yard or side yard.

According to representations made by the landowners in the application for the building permit and in the sketch which they submitted to the Board, the property consists of 11,080 square feet of land and is 110 to 130 feet wide. The multi-family dwelling, which faces north onto West High Street, has a front yard that is twelve feet deep, a rear yard that is sixty feet deep, a side yard on its eastern facade that is thirty-four feet, eleven inches wide and another on its western facade that is eighteen feet, six inches wide. If these representations are accurate, the multi-family dwelling is presently nonconforming as to the minimum lot area, minimum lot width, front and side yard requirements.

The landowners are, in effect, proposing to convert the structure presently being used as a detached private garage into a single family dwelling with an integral private garage. As a result of that conversion, the multi-family dwelling would not for the first time, be in accordance with the rear yard requirement of the ordinance. This would be so even though the space between the rear lot line and the nearest roofed portion of the multi-family dwelling would remain sixty feet deep. The space would, in contravention of Section 71.5(2) of the zoning ordinance, be obstructed by a main building—specifically, a single family dwelling—as opposed to an accessory building.

█ Meanwhile, because the structure facing onto North Green Street will become a main building, it will, for the

first time, be required to comply with the various dimensional requirements set forth in Section 55.4 of the Ordinance. Thus it, inter alia, must have 7,000 square feet of land area to comply with the minimum lot area requirement. There is, however, no land area available for this purpose because all of the property's 11,080 square feet of land and more were necessarily allocated to satisfying the minimum lot area requirement pertinent to the existing multi-family dwelling. Land area once counted for the purpose of meeting a particular requirement cannot be counted a second time for the purpose of meeting the same type of requirement with respect to other development. *Appeal of John J. Bateman,* 39 Pa. Commonwealth Ct. 579, 396 A.2d 72 (1979). Consequently, the conversion of the garage into a single family dwelling will result in yet another first-time violation of the dimensional requirements of the Ordinance.

Therefore, *Yocum* and *Grubb* differ in fact from the present case. Accordingly, we conclude that the Board was correct in its conclusion that the landowners could not, as a matter of right, proceed to construct the addition to the structure being used as a garage and to convert it into a single family dwelling. Instead, as the Board concluded, it was necessary that they first obtain variances from those dimensional requirements that would, for the first time, be violated as the result of the presence of a single family dwelling on the subject property, including those two mentioned in the above discussion.[5]

5. The landowners failed to establish that the structure in question had, prior to the enactment of the zoning ordinance, been used as a dwelling on more than just a casual basis and that that use had not been abandoned by the time of the enactment of the zoning ordinance or at any time subsequent thereto. If they had established these facts, then the Board would be required to conclude that two main buildings were on the property when the zoning ordinance was enacted and, since the dimensional nonconformities existed at that time, that no variances were necessary. Such a conclusion cannot, however, be based on the sole fact that the structure, on the date of the enactment of the zoning ordinance, was capable of being adapted for future use as a single family dwelling. The landowners' reading of *Haller Baking Company's Appeal,* 295 Pa. 257, 145 A. 77 (1928), as support for such a proposition is erroneous.

Section 89.1 of the Ordinance, which is patterned after Section 912 of the Municipalities Planning Code, 53 P.S. § 10912, provides:

1. Variances—The Zoning Hearing Board shall hear requests for variances where it is alleged that the provisions of this Part 1 inflict unnecessary hardship upon the applicant.... The Board may grant a variance provided the following findings are made where relevant in a given case:

(1) That there are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property, and that the unnecessary hardship is due to such conditions, and not the circumstances or conditions generally created by the provisions of this Part 1 in the neighborhood or district in which the property is located;

(2) That because of such physical circumstances or conditions, there is no *possibility* that the property can be developed in strict conformity with the provisions of this Part 1 and that the authorization of a variance is therefore *necessary to enable the reasonable use of the property.* (Emphasis added.)

█ In this case, the Board concluded that the landowners had failed to establish the "unnecessary hardship" required by the above provision. The landowners contend that that conclusion is erroneous. They assert that the lack of sufficient space in their present dwelling [6] to accomodate their growing family constitutes the requisite "unnecessary hardship".

The fact, however, that the property is presently the site of a three-unit multi-family dwelling establishes that the hardship of which the landowners complain is not related to the unique character of the land. Furthermore, it establishes that, if the subject property is developed in strict con-

6. The landowners presently reside in one of the three units in the multi-family dwelling.

formity with the zoning ordinance, a variance is not necessary to enable the landowners to make *reasonable* use of it.

Accordingly, the order of the court of common pleas is affirmed.[7]

## ORDER

NOW, June 27, 1989, the order of the Court of Common Pleas of Northampton County, dated June 29, 1988, at No.1988–C–1098, is affirmed.

7. Because the standard for an "unnecessary hardship" is the same for all variances and it is clear that the multi-family dwelling would violate the rear yard requirement and that the single family dwelling would violate the minimum lot area requirement, we do not address the questions of whether the single family dwelling would violate the other dimensional requirements from which, according to the Board, the landowners would need variances, or the "rear dwelling" prohibition.