617 A.2d 61

SPRING GARDEN CIVIC ASSOCIATION and Francisville Neighborhood Advisory Committee

v.

ZONING BOARD OF ADJUSTMENT OF the CITY OF PHILADELPHIA, City of Philadelphia, and Project H.O.M.E.

Appeal of PROJECT H.O.M.E., Appellant.

SPRING GARDEN CIVIC ASSOCIATION and Francisville Neighborhood Advisory Committee

v.

ZONING BOARD OF ADJUSTMENT OF the CITY OF PHILADELPHIA, City of Philadelphia, and Project H.O.M.E.

Appeal of CITY OF PHILADELPHIA, Appellant.

Commonwealth Court of Pennsylvania.

Argued June 15, 1992.

Decided Nov. 10, 1992.

Reargument Denied Jan. 11, 1993.

414

William H. Ewing, for appellant, Project H.O.M.E.

Joseph M. Taylor, Asst. City Sol., for appellant, City of Philadelphia.

Larry H. Spector, for appellees.

Before PALLADINO and FRIEDMAN, JJ., and NARICK, Senior Judge.

FRIEDMAN, Judge.

Project H.O.M.E. appeals from an order of the Court of Common Pleas of Philadelphia County reversing a decision of the Philadelphia Zoning Board of Adjustment (ZBA) and ordering revocation of the zoning and use registration permit issued to Project H.O.M.E. We reverse.

The Department of Licenses and Inspections (Department) issued an over-the-counter permit granting Project H.O.M.E.'s application for interior alterations to pre-existing structures at 1515–21 and 1523 Fairmount Avenue and for use of the renovated buildings as commercial offices, one dwelling unit and housing for approximately 48 single adults.[1] Project

---

1. Much discussion, both before the ZBA and in the briefs, is devoted to the fact that the issuance of the permit was based in part on a memorandum interpreting the ordinance authored by a former licensing and inspection commissioner, Henry G. Herling. The memo stated, in pertinent part:

In order to properly process applications for boarding homes, personal care facilities and similar residential uses under the provisions of the Residential Districts in the Zoning code, the following interpretations shall be applied:

. . . .

H.O.M.E. proposes to merge the two lots and to breach the wall between the two existing buildings. The building at 1515–21 Fairmount does not conform to the zoning ordinance rear yard area requirements; the building at 1523 Fairmount apparently does. Spring Garden Civic Association (Association) appealed to the ZBA which upheld the grant of the permit on the grounds that the proposed use is a charitable institution and that the rear yard requirement in the C–2 Commercial District does not apply to charitable institutions.[2] The Association then appealed to the Court of Common Pleas of Philadelphia County, which reversed and remanded with instructions to the Board to revoke the permit. Project H.O.M.E. appeals.

Before the trial court, the Association successfully argued against the ZBA's conclusion that "[t]he rear yard requirements in a C–2 district do not apply to charitable institutions."[3] The Association contended that the rear yard requirements in a C–2 zone govern any building containing three or more families regardless of the nature of the person who happens to own or use the building. The trial court agreed,

> Where the residents of the property are to receive care, supervision or oversight, the property shall be treated as an institution, nursing home, rest home or old age facility.
> (R.R. at 240a.) (Emphasis added.)
> This memo merely alerts those processing applications to the fact that the zoning ordinance treats housing uses differently depending upon whether care, supervision and oversight are provided. In Residential Districts the effect of this memo is to provide additional review of institutional uses. Because the qualification that non-residential uses in a Residential District require a certificate is not applicable in C–2 districts, the distinction between traditional residential uses and institutional residential uses addressed in this memo is irrelevant unless it affects other parts of the ordinance (such as the definition of families), and those parts of the ordinance affect the permissibility of the proposed use in the proposed structure.

2. Findings of Fact and Conclusions of Law of the Zoning Board of Adjustment, Conclusions of Law Nos. 1, 4, 5 and 16. The ZBA interpretation of the Herling memo would not only make the distinction between traditional and institutional residential uses applicable to the C–2 Commercial District but, contrary to its more restrictive effect in Residential Districts, would eliminate rear yard requirements for institutional uses in the C–2 zone.

3. Conclusion of Law, No. 5.

holding that it could not find "a solitary word in the Zoning Code (or the case law) that exempts or excepts well-intentioned and/or charitable organizations from the rear-yard requirement," and ordered the ZBA decision reversed and the case remanded to the ZBA with instructions to revoke the permit.[4] The trial court refused to consider whether the proposed use of the building was a lawful extension of an existing nonconforming use, stating that the ZBA decision had not addressed that question. (Trial court op. at 5–6.)

Project H.O.M.E. argues that the common pleas court erred in refusing to hold that Project H.O.M.E. is entitled to a permit on the grounds of an existing non-conformity. Project H.O.M.E. also argues that the residents of the facility will not live independently and, therefore, are not families for purposes of calculating the rear yard requirement and that the zoning ordinance does not establish rear yard requirements for charitable institutions in C–2 Commercial Districts.[5] The Association argues that each of the 48 single individuals is a separate family for purposes of determining the yard requirement, that the rear yard requirement cannot be met in the existing buildings and that the requirement is not nullified by the characterization of the use as non-residential or as a charitable institution.

■■■■ Our scope of review in this case where the trial court took no additional evidence is limited to determining whether the Zoning Board of Adjustment abused its discretion or committed an error of law. *Pa. Northwestern Distributors, Inc. v. Zoning Hearing Board,* 526 Pa. 186, 189, 584 A.2d 1372, 1373 (1991). If the ZBA committed an error of law, we may reach an alternate conclusion if that conclusion is sup-

4. The trial court said that nothing in its order was intended to prevent Project H.O.M.E. from seeking a variance and that its opinion does nothing more than decide that the permit in question should never have been issued on an over-the-counter basis. (Trial court op. at 5.)

5. The idea that non-residential uses such as charitable institutions may be exempt from the area requirements of the C–2 district appears in the testimony of Anthony Pugliese, Chief of the Permit Issuance Section of the Department of Licenses and Inspections (R.R. at 59, 60, 142), and is repeated in the ZBA's Conclusion of Law No. 5. This is the point on which the trial court reversed the ZBA.

ported by the findings. *Malakoff v. Board of Adjustment,* 72 Pa.Commonwealth Ct. 109, 113, 456 A.2d 1110, 1113 (1983). The findings must be supported by substantial evidence which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Valley View Civic Association v. Zoning Board of Adjustment,* 501 Pa. 550, 555, 462 A.2d 637, 640 (1983).

This case involves a proposal to renovate a non-conforming structure for a new use which is permitted in the district. The issue before us is whether a rear yard requirement, based upon number of families in a building, applies to a permitted institutional use in an existing non-conforming structure when alterations and change of use are proposed and when the lot will be merged with an adjoining apparently conforming lot and the buildings on the lots will be joined by breaching the wall between them.

■ In a C–2 Commercial District, the Philadelphia zoning ordinance permits the alteration or use of buildings or land for the uses permitted in any Residential District.[6] Separate area, height, off-street loading, off-street parking and signage regulations apply to uses permitted in the C–2 district. Area regulations prescribe the size of rear yards based upon whether the building use is commercial and/or containing less than three families or whether the building contains three or more families.[7] The existing structure at 1515–21 Fairmount Ave-

---

**6.** Charitable institutions, rest, old age, nursing or convalescent homes, and nurseries as well as hospitals and sanitaria are permitted in residential districts under the provisions for non-residential uses. Thus, uses providing shelter as part of their function are clearly included in the non-residential category. In an "R–2" Residential District, for instance, these uses are permitted "only if a Board of Adjustment certificate is obtained...." whereas in a "C–2" Commercial District this proviso is eliminated: "All use qualifications provided in Residential Districts are not required in this district." Philadelphia Code, §§ 14–203(2) and 14–303(2).

**7.** Philadelphia Code, § 14–303(4)(g) provides:
*Rear Yard and Rear Yard Area.*
(.1) Buildings used for commercial purposes and/or containing less than three families shall have a rear yard with a minimum depth of not less than 10% of the lot depth, but in no case less than eight feet.

nue has no rear yard and meets neither of these requirements. The Association alleges that the second building at 1523 Fairmount Avenue is presently conforming, but would be made non-conforming under the proposal.

The Philadelphia zoning code provides:

Any structure ... which was a non-conforming structure ... under the terms of the zoning ordinance of August 10, 1933, as amended, shall continue to be a non-conforming structure ... which may continue at the same location, but shall be subject to the provisions, limitations and restrictions of this Section governing non-conforming structures. ...

Philadelphia Code, § 14–104(1). The Code permits extension of such structures with the proviso that the structure "shall not be extended in any manner which will cause said structure to exceed or further exceed the regulations of the district in which it is located."[8] An existing non-conforming structure may be put to any use permitted in the district so long as the altered use does not increase the non-conformity of the structure.[9] *See Chrin v. Zoning Hearing Board*, 127 Pa.Commonwealth Ct. 279, 561 A.2d 833 (1989) (cannot construct an addition to a garage and convert use to a single family dwelling when to do so would create a dimensional nonconformity where one had not previously existed); *Immordino v. Zoning Hearing Board*, 65 Pa.Commonwealth Ct. 79, 441 A.2d 818 (1982) (cannot expand number of dwelling units if the otherwise permissible use will increase the dimensional nonconformity of an existing structure); *Sukthankar v. Radnor Township Zoning Appeals*, 2 Pa.Commonwealth Ct. 489, 280

(.2) Buildings containing three or more families shall have a rear yard with a minimum depth of nine feet, and a minimum Rear Yard Area of 344 square feet, plus an additional 100 square feet of Rear Yard Area for each additional family more than three families.

8. Philadelphia Code, § 14–104(8).

9. Because we decide that the proposed use will not increase the nonconformity of the pre-existing structure, we need not reach the main issue on which the trial court and the ZBA disagreed: whether denominating an admittedly commercial use as a "charitable institution" eliminates the rear yard requirements. *See* Finding of Fact No. 2 and Conclusion of Law No. 5.

A.2d 467 (1971) (may convert carriage house conforming as to use but non-conforming as to set back to another conforming use because the building walls, the lot size and the dimensional non-conformity will remain the same); *Yocum Zoning Case,* 393 Pa. 148, 141 A.2d 601 (1958) (permitting extension of a second story to coincide with first story edges of a building because the extension would require no additional land, would result in no further encroachment of the yard set backs and would not increase the non-conformity of the existing structure).

 In this case, the record and the findings of fact support the conclusion that the building at 1515–21 Fairmount previously contained a permitted commercial use in a pre-existing non-conforming building.[10] The Association's argument that the proposed use will increase the non-conformity presupposes that the building will contain three or more families so that the more stringent rear yard requirements apply. A family is defined by the Philadelphia zoning code as "[a] person living independently; or a group of persons living as a single household unit using housekeeping facilities in common, but not to include more than three persons unrelated by blood, marriage or adoption." [11]

 Because the proposed project will include more than three unrelated persons, the only part of this definition which could conceivably apply to a resident is "a person living independently." The term "living independently" is not defined in the zoning ordinance and, thus, must be accorded its usual and ordinary meaning. *Allegheny Valley School v. Zoning Hearing Board,* 102 Pa.Commonwealth Ct. 290, 295, 517 A.2d 1385, 1387 (1986). The ZBA found that the proposed project "will house six or more individuals who because of mental disability or other reasons must live in a supervised environment" [12] and "will provide supervision, care and over-

10. The previous owner applied for a permit to build a warehouse and showroom in 1932 and the structure was built prior to the effective date of the zoning ordinance, August 10, 1933. Findings of Fact, Nos. 23 and 24.

11. Philadelphia Code, § 14–102(21).

12. Conclusion of Law, No. 10.

sight."[13] This use is not consistent with the usual and ordinary meaning of "living independently."[14] Thus, pursuant to the definition of family in the Philadelphia zoning code, we conclude that these 48 individual residents are not 48 separate families and the building will not house three or more families. Therefore, the increased rear yard requirements for buildings containing three or more families do not apply and the non-conformity of the building at 1515–21 Fairmount will not be increased by the proposed use.

The Association also argues that merging the lots and breaching the wall between 1515–21 and 1523 Fairmount will result in the building at 1523 Fairmount becoming non-conforming for the first time, and will be an extension of a non-conforming use in contravention of the Philadelphia zoning code.[15] The Code provides:

> A non-conforming structure ... shall not be extended in any manner which will cause said structure to exceed or further exceed the regulations of the district in which it is located, but a non-conforming structure may be extended if the extension thereof is erected within the regulations of the district in which said structure is located....

Philadelphia Code, § 14–104(8).

This case differs from *Fagan v. Zoning Board of Adjustment*, 389 Pa. 99, 132 A.2d 279 (1957) where Fagan sought permission to build a new non-conforming structure on a lot adjoining an existing non-conforming structure. Our Supreme Court held that the fact that an existing building did not conform to the rear yard and open space requirements did "not confer upon the owner the right to erect upon an adjoin-

---

**13.** Conclusion of Law, No. 11.

**14.** Independent is defined as: "a(1) not subject to control by others ... b(1): not requiring or relying on something else ... (3): not looking to others for ... guidance of one's conduct ... c(1): not requiring or relying on others." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1148 (1986).

An alternate definition of independent is: "Not dependent; not subject to control, restriction, modification, or limitation from a given outside source." BLACK'S LAW DICTIONARY 693 (5th ed. 1979).

**15.** Philadelphia Zoning Code, Section 14–104(8).

ing lot subsequently purchased an additional non-conforming building." *Id.* at 103, 132 A.2d at 281. In contrast, Project H.O.M.E.'s proposed merger of the lots and breaching of the wall between two existing structures does nothing to extend the physical dimensions of the buildings involved nor to change the ratio of building to land area. Applying the Code, the issue is whether merging the lots and combining the buildings will cause the building at 1515–1521 to "further exceed the regulations of the district." Review of the record reveals no evidence that the attachment of the building at 1523 Fairmount to the larger pre-existing non-conforming structure at 1515–1521 Fairmount will increase the non-conformity of that structure.

We conclude that the issue of non-conformity was properly raised and preserved, that the ZBA's findings are based upon substantial evidence and that those findings support the alternate conclusion which we reach. We hold that the proposal as a whole will not create a greater non-conformity than presently exists nor will it cause the structure at 1515–1521 to "further exceed the regulations of the district." The decision of the ZBA should have been affirmed.

Accordingly, the order of the Court of Common Pleas of Philadelphia County is reversed and the decision of the Philadelphia Zoning Board of Adjustment is affirmed on different grounds.

## ORDER

AND NOW, this 10th day of November, 1992, the order of the Court of Common Pleas of Philadelphia County, dated December 19, 1991, is reversed and the decision of the Philadelphia Zoning Board of Adjustment, dated March 25, 1991, is re-instated.