**Paladino v. Zoning Hearing Board of Taylor Township**

C.P. of Lawrence County, no. 70384 of 1994, M.D.

*George P. Micacchione,* for appellants.
*John W. Hodge,* for appellee.

PRATT, *J.,* March 6, 1996—The Zoning Hearing Board of Taylor Township has appealed to the Pennsylvania Commonwealth Court from the December 13, 1995 order of this court, which reversed the board's

denial of Debra and Anthony Paladino's application for a variance. By this opinion, the court shall address the board's statement of matters complained of on appeal, filed at the request of the court, to satisfy Pa.R.A.P. 1925(a).

## RELEVANT PROCEDURAL
## AND FACTUAL HISTORY

The record reveals that, on June 3, 1994, the Paladinos applied to and were granted a building permit by the Board of Supervisors of Taylor Township, Lawrence County, to construct a "pole building" on their residential property in Taylor Township, Lawrence County. Zoning Officer Bernard Camerot, as the authorized representative of the board of supervisors, granted the building permit. Although the building permit indicated that the structure was to be a "pole building" for "storage," the Paladinos related to Camerot, before the permit was issued, that the structure was going to be a barn used for the purpose of housing their daughter's horse. (Board Hearing Transcript pp. 7, 8.) Camerot did not object, at any time, to the Paladinos constructing the barn for its intended use as related to him by the Paladinos. (H.T. p. 8.)

Thereafter, but prior to the Paladinos commencing construction, the Paladinos' contractor informed them that the structure would need to be larger than the original 12 feet by 12 feet dimensions that the June 3, 1994 building permit had reflected. (H.T. p. 16.)

Because of the change in the proposed building's dimensions, Camerot inspected the Paladinos' property to determine whether the change would cause a zoning ordinance violation. On Camerot's first visit to the Paladinos' property, he informed the Paladinos that the wooden stakes in the ground, which indicated where

the barn would be built, were too close to the property line. (H.T. pp. 42-44.)

Then, upon a second visit to the Paladinos' property by Camerot, a measurement of the distance from the stakes to the property line was made, and Camerot determined that there was no zoning ordinance violation. (H.T. pp. 45-46.)

The Paladinos constructed the barn at a cost of $5,121.21. (H.T. p. 10.) Thereafter, the board orally informed the Paladinos that they would not be permitted to house a horse on their property, because such a use was not permitted in an R-2 residential zoning district, in which their property was located.

Consequently, the Paladinos applied to the board for a variance so that the structure could be used to house the horse.

On October 26, 1994, a public hearing was held at the Taylor Township Municipal Building, at which the Paladinos and neighbors of the Paladinos testified regarding the variance to house a horse on the Paladinos' property. Only one neighbor, Mrs. Alfred Fulkerson, objected to the variance. (H.T. pp. 36-42.) The meeting was continued until October 27, 1994, because the board wanted to view the Paladinos' property before making a determination in the matter.

On October 27, 1994, after viewing the Paladinos' property, the board resumed the meeting and denied the Paladinos' application for a variance. Essentially, the board concluded that housing a horse in an R-2 residential zoning district is not permitted by the Taylor Township Zoning Ordinance. (Board conclusion no. 2.)

The board further found that, pursuant to the Taylor Township Zoning Ordinance, a barn in an agricultural district must be no less than 200 feet from any zoned

residential district or dwelling of another; therefore, in an R-2 residential zoning district the same or more strict standard should apply to a barn. Accordingly, the board determined that, because the Paladinos' barn was located approximately 48.8 feet from the neighboring property line and approximately 124 feet from the nearest neighboring dwelling, the barn would not meet the zoning requirements, even if the Paladinos' property was located in an agricultural district. (Board conclusion no. 2(a).)

The board ultimately decided that the Paladinos failed to meet their burden of proof that any unique physical condition or circumstance existed on the property that would cause an unnecessary hardship thereby preventing the Paladinos from using the property. The board, therefore, concluded that the Paladinos did not satisfy the criteria for the granting of the variance.

On December 29, 1994, the Paladinos filed a notice of appeal to this court from the decision of the board. The Paladinos and the board filed briefs in support of their respective positions and oral argument in the matter was heard on December 11, 1995. The Paladinos argued, among other things, that the findings of the board supported the granting of a variance by estoppel. (Because the parties stipulated that this court could dispose of the appeal from the existing record, the court did not take any additional evidence.)

After reviewing the parties' briefs and considering their oral arguments, the court, by order of December 13, 1995, reversed the board's decision and granted the Paladinos' application for a variance.

## DISCUSSION

Essentially, the board's argument on appeal is that this court substituted its own judgment for that of the

board without making a determination as to whether the board's findings of fact and conclusions of law were supported by substantial evidence.

Because this court took no additional evidence, our scope of review is limited to determining whether the board abused its discretion or committed an error of law. *Spring Garden v. Zoning Board of Adjustment,* 151 Pa. Commw. 413, 617 A.2d 61 (1992).

In the instant case, the board denied the Paladinos' application for a variance based upon the finding that the Paladinos failed to satisfy the criteria for the granting of a variance. Specifically, the board found that the Paladinos failed to demonstrate that any unique physical condition or circumstance existed regarding the property which would cause an unnecessary hardship and prevent the Paladinos from using the property. (Board Conclusion no. 2(a).)

However, as the Paladinos asserted in their appeal to this court, a variance may be granted by virtue of the theory of "variance by estoppel." The following criteria must be met before a variance by estoppel may be granted:

(1) municipal failure to enforce the law over a long period of time *or* some form of "active" acquiescence of the illegal use,

(2) good faith throughout the proceedings by the property owner, and

(3) innocent reliance evidenced by substantial expenditure. *Hudachek v. Zoning Hearing Board of Newtown Borough,* 147 Pa. Commw. 566, 608 A.2d 652 (1992), citing *Caporali v. Ward,* 89 Pa. Commw. 621, 493 A.2d 791 (1985).

## I. *Active Acquiescence of the Illegal Use*

The board's record and findings of fact indicate that the Paladinos were issued a building permit for a pole building for the purpose of storage. (Findings of fact no. 11.)

However, the board acknowledged in its findings of fact that the Paladinos informed Camerot that he was intending to house a horse in the building for which he was applying for a building permit. (Findings of fact no. 13.) The record also indicates that Camerot issued the building permit with the knowledge that the building was going to be used to house a horse. (H.T. p. 9.)

Although the dimensions of the structure were ultimately altered from those which were originally indicated in the building permit, the uncontradicted testimony reveals that Camerot inspected the proposed building site after the dimensions were changed but before construction began, and Camerot determined that the larger dimensions would not cause a zoning ordinance violation. (H.T. pp. 45-46.)

Therefore, the township zoning officer's granting of the permit with knowledge that the structure was going to be used to house a horse, coupled with Camerot's inspecting the building site on two occasions and indicating that there was no zoning ordinance violation, constitutes "active" acquiescence of the illegal use.

## II. *Good Faith by Property Owner*

The findings of fact of the board support the conclusion that the Paladinos used good faith throughout the proceedings. They applied for a building permit before constructing the barn, informed the township zoning officer of the purpose for which the structure

was going to be used, arranged for the zoning officer to view the proposed building site to determine whether the proposed structure would violate any zoning ordinance, and applied for a variance when they were informed that they would not be permitted to house the horse on their property. (Findings of fact nos. 1-3, 11, 13.)

### III. *Innocent Reliance Evidenced by Substantial Expenditure*

The board's findings of fact also indicate that the Paladinos incurred construction expenses in the amount of $5,121.21 by relying on the representations of Camerot, an agent of the township. (Findings of fact nos. 13, 14.) This constitutes innocent reliance evidenced by substantial expenditure.

Moreover, the board acknowledged that the prior owner of the Paladinos' property had a horse on the property from 1972 until 1985 (Findings of fact no. 15), only one neighbor objected to the granting of the variance (Findings of fact nos. 16, 17), and there were many nonconforming uses in the Paladinos' neighborhood. (Board Conclusion no. 2(d).)

From the board's record and findings, we believe the Paladinos, in seeking their variance on the theory of estoppel, established the necessary elements of variance by estoppel by clear, precise and unequivocal evidence. See *Funds for Business Growth Inc. v. Maraldo,* 443 Pa. 281, 278 A.2d 922 (1971).

In a case similar to one currently before the court, the Commonwealth Court found that there was sufficient evidence to support the granting of a variance by estoppel. In *Caporali v. Ward, supra,* the landowners had purchased property in reliance on the township planning

commission's ruling that granted the landowners' authority to keep certain farm animals on the property. After the landowners had moved onto the property with their farm animals, the next-door neighbors, the Caporalis, complained to the township about the odor of the animals. Consequently, the zoning officer ordered the landowners to remove their farm animals from their property.

The landowners appealed to the township zoning board, which found that the use was proper, because it was a continuation of farming operations that had been carried out on the property for the past 50 years by the prior property owners. The decision was appealed, and the trial court heard the case de novo, holding that there was no continuing nonconforming use, but that the use variance should be granted on the theory of equitable estoppel.

On appeal, the Commonwealth Court held that the lower court properly granted a variance by estoppel, because the municipality had actively acquiesced in the illegal use by giving the landowners permission to maintain farm animals on their land, and the landowners in good faith relied on the municipality's representation to their detriment by purchasing the property and making substantial improvements on the property.

As in *Caporali v. Ward, supra,* we believe the findings of fact of the board, which are supported by substantial, clear, precise and unequivocal evidence, establish a sufficient basis for granting the Paladinos' request for a variance on the theory of variance by estoppel. By failing to do so, this court finds that the board committed an error of law, which was remedied by the court's December 13, 1995 order reversing the board's denial of the Paladinos' application for a variance.

496

## ORDER

In compliance with Pa.R.A.P. 1925(a), the court directs the prothonotary to file the attached opinion and immediately transmit the record to the Commonwealth Court.