IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Lindsey Rockers and Scott Rockers, | : | |
| Appellants | : | |
| | : | |
| v. | : | No. 949 C.D. 2024 |
| | : | Argued: June 3, 2025 |
| Haverford Township Zoning Hearing Board and Haverford Township | : | |

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
HONORABLE MICHAEL H. WOJCIK, Judge
HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY SENIOR JUDGE LEAVITT[1]                FILED: January 22, 2026

Lindsey and Scott Rockers (Rockers) appeal an order of the Court of Common Pleas of Delaware County (trial court) affirming the decision of the Haverford Township Zoning Hearing Board (Zoning Board) to grant their request under the Fair Housing Amendments Act of 1988 (Fair Housing Act)[2] to construct an addition to their home to accommodate the needs of their disabled son. However, the Zoning Board conditioned the grant of its accommodation to a single-story addition. On appeal, the Rockers contend that the Zoning Board's condition violates the Fair Housing Act. They contend that they established that their proposed two-story addition is necessary for their permanently disabled six-year-old son to be able to use and enjoy the family residence. For the reasons that follow, we reverse the trial court.

---

[1] This case was reassigned to the authoring judge on November 7, 2025.

[2] 42 U.S.C. §§3601-3631.

## Background

The Rockers reside at 2019 Oakmont Avenue in Haverford Township (Township), Delaware County, with their five children. Their six-year-old son, G.R., was born with profound disabilities, which make him unable to walk, talk, eat normally, or sit.[3] In July of 2019, the Rockers, *pro se*, filed an application for a variance with the Zoning Board to construct a two-story, 476-square-foot addition to the side of their home and to install a 40-square-foot ramp compliant with the Americans with Disabilities Act of 1990 (ADA),[4] in order to make their house accessible for G.R. and to provide more room for their expanding family. A variance was requested because the proposed addition would encroach into the required 8-foot side yard setback under the Township Zoning Ordinance by 4 feet and not meet the minimum 20-foot aggregate total for side yards.[5] Additionally, the Rockers sought to extend the existing front façade to construct a new entrance, which will encroach into the required 30-foot front yard setback.[6]

After submitting the application, the Rockers retained counsel, who notified the Township that the Rockers' application should instead be processed as a reasonable accommodation request under the Fair Housing Act.[7] The application

---

[3] G.R. has been diagnosed with quadriplegic choreoathetoid cerebral palsy, epilepsy, dysphasia, and nystagmus. Notes of Testimony (N.T.), 11/21/2019, at 16-17; Reproduced Record at 143a-44a (R.R. __).

[4] 42 U.S.C. §§12101-12213.

[5] HAVERFORD TOWNSHIP, DELAWARE COUNTY, PA., ZONING ORDINANCE §§182-101-182-1306 (2019) (Zoning Ordinance). Section 182-206.C(6)(a) provides that side yards for residential use require "20 feet aggregate total, with an eight-foot minimum each." ZONING ORDINANCE §182-206.C(6)(a).

[6] ZONING ORDINANCE §182-206.C(5)(a) ("Front yard: (a) Interior lot: 30 feet minimum.").

[7] The Rockers submitted their accommodation request to the Township, which referred the request to the Zoning Board with the recommendation of the Township's solicitor that the request be granted. R.R. 53a. With the Zoning Board's permission, the Rockers' variance application

2

sought an accommodation from the dimensional restrictions set forth in Sections 182-206.C(6)(a) and 182-206.C(5)(a) of the Zoning Ordinance.

The Zoning Board conducted hearings on the Rockers' application that spanned several months.

Lindsey Rockers testified that G.R. has choreoathetoid cerebral palsy, and as a result, he cannot walk, sit up, or talk. G.R.'s bedroom is on the second floor of their house, and the Rockers' bedroom, on the third floor, is accessed by steps from G.R.'s bedroom. Mrs. Rockers explained that G.R. currently sleeps in a crib, and they need to move him to a sleep-safe bed, which operates like a hospital bed but has foldable walls and padding to keep G.R. from injuring himself. Because of the size of the sleep-safe bed, G.R. needs a larger room that can accommodate his dresser, medical equipment, and a chair for his nurse. Mrs. Rockers also explained that the existing second-floor bathroom has three feet of floor space, which is too small to accommodate a larger bath chair for G.R. or to turn around his wheelchair.

Mrs. Rockers testified that as G.R. gets older, he will begin using a "very large power chair with head-to-toe orthopedic support[,]" which is controlled "with a switch next to the side of his head." N.T., 8/15/2019, at 7; R.R. 99a. Because G.R. lacks fine motor control, he needs "wide, open spaces to be able to operate his power chair and access the different points of [their] home." N.T., 8/15/2019, at 8; R.R. 100a.

Mrs. Rockers testified that their house is 1,700 square feet in size. To make the house accessible for G.R. and to provide more room for their family, they

included the request for an accommodation under the Fair Housing Act. N.T., 11/21/2019, at 7-8; Supplemental Reproduced Record at 96b-97b (S.R.R. __). Notably, under its current ordinance, which was adopted after the Rockers submitted their accommodation request, the Township Manager or its "designee" determines accommodation requests. GENERAL LAWS OF THE TOWNSHIP OF HAVERFORD PENNSYLVANIA §81-5 (adopted November 9, 2020).

seek to build a two-story addition, measuring 10 feet in width and 43 feet in length onto the side of their house. N.T., 8/15/2019, at 37; S.R.R. 37b. This addition would allow the installation of an ADA-accessible corridor to link the main living areas with a new first-floor bedroom and ADA-accessible shower room for G.R. The wider hallways will allow G.R. to navigate through the house on a power chair.

Mrs. Rockers testified that the second floor of the addition will provide G.R. a larger bedroom and bathroom. She explained that it is becoming increasingly difficult to bathe G.R. safely; an expanded bathroom will provide room needed to maneuver G.R. and to install an ADA-accessible bathtub. The larger bedroom is needed to accommodate G.R.'s medical bed and equipment. The Rockers' goal is to keep G.R. on the second floor as long as possible, at least until he is 10 years old. Because of his medical condition, he needs to remain in close proximity to his family at night. G.R. will be moved to the first floor when he becomes too big to carry up and down the stairs.

Mrs. Rockers stated that they considered several options to modify their house to accommodate G.R.'s needs. Their home is 20 feet wide, and the installation of a 4-foot-wide ADA accessible corridor would take up approximately 25% of the existing floor plan. Because they cannot have "half of [their] house just be a hallway[,]" Mrs. Rockers stated that building onto the back of the house was not practical. N.T., 8/15/2019, at 39; S.R.R. 39b. The Rockers considered a one-story side and rear addition to the house but determined it was "not feasible" because of cost. N.T., 8/15/2019, at 16; S.R.R. 16b.

G.R.'s pediatrician, Kristen Slack, M.D., provided a letter supporting the Rockers' application. Therein, Dr. Slack wrote that G.R. has "complex cognitive and physical disabilities" and depends on his parents and medical staff for care. R.R.

4

64a. He must be closely monitored during the day and at night "for complications such as aspiration and suffocation." *Id*. Because of his complex disabilities, G.R. requires specialized sleeping and bathing equipment. Dr. Slack explained that "it is important that [G.R.'s] upstairs living space fit his new medical [bed] and bath chair with room for caregivers to maneuver." *Id*. Once his parents and caregivers are no longer able to carry him on the stairs, Dr. Slack wrote that G.R. would "benefit from having a larger bedroom and bathroom in a quiet area on the first floor of his family's home." *Id*.

Mrs. Rockers testified that the current distance between their house and their neighbor's house is approximately 28 feet. After the proposed addition, the distance would be 17 feet, 10 inches. The Zoning Ordinance requires a minimum separation between the houses of 16 feet, which the addition will satisfy notwithstanding the intrusion into the side yard setback requirement.

On cross-examination, Mrs. Rockers testified that when they purchased the house, she and her husband knew it would need an addition in the future to accommodate G.R.'s needs. Mrs. Rockers acknowledged that G.R. presently does not use a self-directed wheelchair.

The Rockers also presented testimony from the contractor who prepared drawings and an estimate for the proposed addition. Matthew Papa, owner of Premier Home Remodeling Group, estimated the proposed two-story addition and remodeling of the interior would cost $105,000.

Several neighbors expressed concerns with the Rockers' application. Richard Kenney, who resides next door, testified that many neighbors have expanded their homes by building into the rear yard. He opposes the Rockers' proposed addition because it is not in character with the other homes in the neighborhood. He

5

believes that "it would really hurt our property value[]" and that it "would cut off the sunlight to our dining room and we would be dealing with noise from the house that close." N.T., 8/15/2019, at 57; S.R.R. 57b. Kenney testified that the side of his house is approximately 9 and one-half feet from the property line, and the Rockers' proposed side addition would be approximately four feet from the property line, making the gap between the two houses approximately 13 to 14 feet.

Following the hearings, on January 14, 2020, the Zoning Board issued a decision that granted the Rockers' application subject to several conditions that follow:

> 1. Only the first-floor addition will extend into the side yard setback and will be a minimum of 4'-0" from the side yard property line. With regard to the second-floor addition, it can only extend to the setback set forth in the code.
>
> 2. The first-floor addition will extend no further than the length of the existing house as depicted on A-4, exclusive of the existing enclosed porch, also described as office/accessible first floor bedroom, for a maximum length of 33 feet 5 inches.
>
> 3. The first-floor addition is only to be used for an ADA compliant corridor and bathroom and the two accessory closets as depicted on A-4.

Zoning Board Initial Decision at 21; R.R. 32a.

The Rockers appealed this decision to the trial court, arguing that the Zoning Board erred in limiting their requested accommodation to a single story. They also filed a motion to take additional evidence to include the Zoning Board's minutes from prior proceedings concerning other variance requests in the record. They made this request to the Zoning Board, but it refused to take judicial notice of its prior minutes.

6

On May 2, 2023, the trial court denied the Rockers' motion to take additional evidence for the stated reason that the Zoning Board acknowledged it had granted other variances. However, these decisions were not relevant. On the other hand, the trial court agreed that the Zoning Board, "despite being fully aware of the nature of the Rockers' [a]pplication and the legal standards applicable to it," did not demonstrate that it applied the standards of the Fair Housing Act to the Rockers' application. Trial Court Op., 5/2/2023, at 9. The trial court remanded the matter to the Zoning Board for further consideration of the Rockers' application, using the standards applicable to accommodation requests set forth in the Fair Housing Act.

On remand, the Zoning Board made additional findings of fact and conclusions of law to supplement its original decision. As to the second-floor addition, the Zoning Board made the following factual findings:

9. [The Rockers] contented [sic] the reason for the proposed addition and improvements were twofold, (1) [the Rockers] desired to expand their 1,700 square foot home . . . to give their growing family (including the fifth child who was expected at the time of the initial hearing) more living space; and (2) to make the home more accessible for their son[.]

10. There are no dimensions depicted in [the Rockers'] plans . . . for the individual rooms proposed on the second floor and there is no testimony that having maximum floor space on the second floor, inclusive of the additional bedroom, corridor, linen closet, and bathroom is necessary for [G.R.'s] use and enjoyment of the home. []

11. Additionally, the record is devoid of testimony establishing how the second floor additional bedroom, bathroom, corridor, linen closet and revisions to the stairs to [the Rockers'] bedroom on the third floor are necessary for [G.R.] to use and enjoy the home, especially when [G.R.] is to be relocated to the first floor, as it was becoming increasingly hard for [the Rockers] to carry him to the second floor. []

7

12.   The [Rockers] reasoning for the second-floor expansion is primarily to accommodate their growing family and the then expected fifth child, rather than as a necessity for [G.R.] to be afforded an equal opportunity to use and enjoy the home.  []

13.   There are viable alternative plans to accommodate the [Rockers'] growing family which do not require zoning relief.  []

Zoning Board Supplemental Decision at 4-5; R.R. 43a-44a.  Based upon these findings, the Zoning Board concluded that the Rockers "did not sustain their burden of establishing that the requested accommodations for the second floor of the addition are reasonable and necessary for [G.R.] to be afforded an equal opportunity to use and enjoy the home and appear to be motivated by the need to accommodate the [Rockers'] expanding family."  Zoning Board Supplemental Decision at 9; R.R. 48a.  Accordingly, it denied the Rockers' requested accommodation for the second-floor addition.

The trial court affirmed the Zoning Board.  Reasoning that the Rockers were also motivated by their growing family to enlarge their house, the trial court held that the Rockers did not prove that the second-floor reconfiguration was necessary to care for G.R.  It also observed there was insufficient evidence about the specific dimensions of the proposed modification on the second floor.[8]  Accordingly, the Rockers' evidence did not prove a direct nexus, or necessity, between the second-floor reconfiguration and G.R.'s medical needs.

The Rockers appealed the trial court's order.

---

[8] *See* Schematic diagrams of each floor.  R.R. 56a-59a.

**Appeal**

On appeal,[9] the Rockers raise four issues for our review, which we combine into two for clarity.[10]  First, they argue the Zoning Board erred because the Rockers' evidence demonstrated that the second-floor reconfiguration was necessary for G.R. to use and enjoy their home.  Second, they argue that the Zoning Board lacked authority to impose conditions on its grant of a reasonable accommodation under the Fair Housing Act to construct an addition to their home.  We address these issues *seriatim*.

**I. Necessity for Second-Floor Addition**

The Rockers argue that the Zoning Board erred because it capriciously disregarded their uncontroverted testimony that the second-story accommodation is

---

[9] Where, as here, the trial court did not accept additional evidence, this Court's review determines whether the Zoning Board abused its discretion or erred as a matter of law. *Dowds v. Zoning Board of Adjustment*, 242 A.3d 683, 692 n.10 (Pa. Cmwlth. 2020).

[10] The Rockers raise four questions for our review:

> 1. Where a Zoning [] Board grants accommodations under the Fair Housing [] Act, but imposes conditions which prevent the [Rockers'] disabled son from being able to use and enjoy the second floor of his family home, should those conditions be stricken as discriminatory under the [Fair Housing Act]?

> 2. Did [the trial court] err by failing to reverse the Zoning [] Board's conditions denying the requested [Fair Housing Act] second floor accommodation where: (1) the [Zoning] Board found G.R. is a person with a disability; (2) the requested accommodations have therapeutic value to G.R. and therefor are necessary to allow G.R. an equal opportunity to use and enjoy his home; and (3) there was no evidence that the requested accommodations would impose a fundamental alteration in the nature of the zoning scheme or impose undue financial or administrative burden?

> 3. Where conditions are attached to a municipal approval and those conditions are not supported by evidence in the record that shows those conditions are necessary, should the reviewing court strike those arbitrary conditions?

> 4. Where a [Zoning] Board approves a first floor accommodation to reduce a side yard setback, does the [Zoning] Board err as a matter of law or abuse its discretion by prohibiting the second floor of the addition with the exact same footprint?

Rockers Brief at 6-7.

9

therapeutically necessary for G.R. to ameliorate the effect of his disability. Mrs. Rockers testified, *inter alia*, that G.R. needs to stay on the second floor as long as possible because his epilepsy causes seizures that require immediate intervention. G.R.'s existing second-floor bedroom is too small to accommodate both a new medical bed and his medical equipment. Likewise, an enlarged bathroom is necessary so that it can hold G.R.'s medical and bathing equipment. With regard to financial necessity, the Rockers argue that the testimony from their contractor established that encroachment into the side yard for the addition was necessary over other alternatives proposed by the Rockers' neighbors or considered by the Zoning Board, such as an extension into the backyard.

In response, the Zoning Board argues that the record supported its conclusion that the requested second-story accommodation was motivated by the need to accommodate the Rockers' expanding family. The necessity element requires that "the accommodation be essential, and not just preferable." Zoning Board Brief at 22 (citing *Vorchheimer v. Philadelphian Owners Association*, 903 F.3d 100 (3d Cir. 2018)). The Rockers' testimony did not establish a nexus between the second-story addition and G.R.'s medical needs. The Rockers did not provide the dimensions of G.R.'s proposed bedroom and did not explain why G.R.'s new bed and medical equipment would not fit into G.R.'s existing bedroom or some other room on the second floor. The Zoning Board argues that the Rockers' evidence indicated, at most, that the second-story addition "would be convenient, desirable, and [] helpful," which did not meet the "high standard" of necessity established in *Vorchheimer.* Zoning Board Brief at 23.

We begin with a review of the Fair Housing Act, which makes it unlawful "[t]o discriminate in the sale or rental, or to otherwise make unavailable or

10

deny, a dwelling to any buyer or renter because of a handicap of . . . (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available[.]" 42 U.S.C. §3604(f)(1)(B). The Fair Housing Act defines unlawful discrimination as "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling[.]" 42 U.S.C. §3604(f)(3)(B).

"[M]unicipal zoning ordinances are subject to the reasonable accommodation requirement of the [Fair Housing Act]." *Evans v. Zoning Hearing Board of Borough of Spring City*, 732 A.2d 686, 693 (Pa. Cmwlth. 1999). "Consequently, municipalities have an affirmative duty to make reasonable accommodations by changing, waiving or making exceptions in zoning rules, policies, practices or services, when such accommodations are necessary to afford the [disabled] persons the same opportunity to use and enjoy a dwelling as those without disabilities." *Id*. In reasonable accommodation cases, courts use the burden-shifting framework developed by the United States Court of Appeals for the Third Circuit in *Lapid-Laurel, L.L.C. v. Zoning Board of Adjustment of Township of Scotch Plains*, 284 F.3d 442 (3d Cir. 2002). *Carunchio v. Swarthmore Borough Council*, 237 A.3d 1183, 1197 (Pa. Cmwlth. 2020). Under this framework, "the plaintiff bears the initial burden of showing that the requested accommodation is necessary to afford [disabled] persons an equal opportunity to use and enjoy a dwelling, at which point the burden shifts to the defendant to show that the requested accommodation is unreasonable." *Id*. (quoting *Lapid-Laurel*, 284 F.3d at 457). Necessity for a reasonable accommodation can be shown on financial grounds or where it will serve a "therapeutic purpose." *Lapid-Laurel*, 284 F.3d at 461.

11

Here, in granting the Rockers an accommodation, the Zoning Board held that they met their burden of proving that their proposed 476-square-foot addition was reasonable and necessary because it would serve a therapeutic purpose. However, the Zoning Board limited the addition to a single story, reasoning that the record was "devoid of testimony" that the second-story addition to the home was needed to meet G.R.'s needs. Zoning Board Supplemental Decision at 4, Finding of Fact No. 11; R.R. 43a. The Rockers argue that this rationale cannot be reconciled with the record. We agree.

A zoning board capriciously disregards evidence "only when [it] deliberately ignores relevant, competent evidence." *Taliaferro v. Darby Township Zoning Hearing Board*, 873 A.2d 807, 814 (Pa. Cmwlth. 2005). "Where substantial evidence supports [a zoning board's] findings, and the findings in turn support the conclusions, it should remain a rare instance where an appellate court disturbs an adjudication based on capricious disregard." *Id*. at 815.

Here, there was extensive evidence from the family and its pediatrician on the need for the second-story expansion and reconfiguration. Mrs. Rockers testified that G.R. needs to sleep on the second floor close to his parents because his seizures require their immediate intervention. N.T., 11/21/2019, at 25-26; R.R. 150a-51a. Thus, "if [G.R.] has a seizure in the middle of the night, we have to administer rescue medication. If he has an episode of vomiting, we have to be able to suction him. Even if he just starts choking on his own respiratory secretions, oral secretions, he just needs very close monitoring pretty much 24 hours a day." N.T., 11/21/2019, at 25-26; R.R. 150a-51a.

Mrs. Rockers testified that G.R. is sleeping in a crib, where "he injures himself," but a sleep-safe bed is being built for him that will protect him as he

12

matures. N.T., 11/21/2019, at 23; R.R. 148a. However, G.R.'s existing second-floor bedroom is too small to accommodate both the special bed and G.R.'s medical equipment. In addition, the second-floor bathroom's limited "three square feet of floor space" makes it difficult to maneuver when bathing G.R., who is always flailing. N.T., 11/21/2019, at 24; R.R. 149a. He needs a larger bathtub that can handle his bath chair.

Mrs. Rockers testified that the Rockers intend to move G.R. to the first floor when he becomes too big to carry up and down the stairs. In the meantime, he needs to have his bedroom on the second floor "as long as possible." N.T., 11/21/2019, at 26; R.R. 151a. G.R.'s pediatrician, Dr. Slack, agreed. She described G.R. as a "non-verbal, non-ambulatory 6-year-old boy with complex cognitive and physical disabilities who is fully dependent on his parents and medical staff for care." R.R. 64a. In her letter of support, Dr. Slack explained as follows:

> Due to [G.R.'s] cerebral palsy and spasticity with frequent dysregulated movements he requires specialized sleeping and bathing equipment. As he grows larger, it will become even more difficult for caregivers to carry him on stairs and safely evacuate him in the case of an emergency. [G.R.] *remains wheelchair dependent for movement and transportation. He also has dysphagia, a seizure disorder and is gastrostomy feeding tube dependent. He should have very close monitoring day and night to monitor for complications such as aspiration and suffocation.*
>
> Due to [G.R.'s] unique medical situations, he will eventually benefit from having a larger bedroom and bathroom in a quiet area on the first floor of his family's home. *In the interim it is important that his upstairs living space fit his new medical [bed] and bath chair with room for caregivers to maneuver.*[11] *The*

---

[11] The dissent points out that the plans submitted to the Zoning Board and contained in the record depicting the enlarged bedroom are inaccurate because the submitted plans are "actually not how [the Rockers] plan on doing it." *Rockers v. Haverford Township Zoning Hearing Board* (Pa. Cmwlth., No. 949 C.D. 2024, filed January 22, 2026) (Cohn Jubelirer, P.J., dissenting), slip op. at 5 (citing S.R.R. at 124b). To that extent, Mrs. Rockers testified, in full, as follows:

> *renovations planned by his parents would provide increased space and accessibility needed to foster* [*G.R.'s*] *neurocognitive development in the safest manner.*

R.R. 64a (emphasis added).

Simply, the Zoning Board's assertion that the record was "devoid of testimony" on how "the second[-]floor" reconfiguration was "necessary for [G.R.] to use and enjoy the home" ignores the unrefuted evidence to the contrary. Zoning Board Supplemental Decision at 4, Finding of Fact No. 11; R.R. 43a. A capricious disregard of evidence occurs where there is a willful and deliberate disregard of competent and relevant evidence, and such a disregard constitutes reversible error. *Taliaferro*, 873 A.2d at 814; *Arena v. Packaging Systems Corporation*, 507 A.2d 18, 20 (Pa. 1986). The Zoning Board capriciously disregarded the record evidence.

The Zoning Board's reliance on *Vorchheimer*, 903 F.3d 100, is misplaced. In that case, a disabled condominium unit owner brought an action against the condominium association under the Fair Housing Act, alleging that the association refused to grant her a reasonable accommodation that would allow her to leave her rolling walker in the building's lobby. Her complaint alleged that the association offered several alternatives: storing the walker in the lobby closet;

---

[Counsel:] Is there anything about the structure of the house that provides rationale for why you decide to go out the side [of the house] instead of the back?

[Mrs. Rockers:] I mean, it's not why we decided to go out the side, but it is helpful and that on the upstairs, like our hallway kind of dead ends into that side of the house anyway. So it was like a natural extension of the hallway. We could naturally just extend our bathroom to include a stand-alone shower room that would be able to accommodate [G.R.] and his bath chair. *The bedroom there is actually not exactly how we plan on doing it. We plan on moving that wall a little bit more to make the bedroom bigger and flipping the closet into that corridor and making it about double that size. So that gave us the ability to give him a much larger bedroom and a large, very large closet that we can store all of his medical equipment in.*

N.T., 11/21/2019, at 34-35; S.R.R. 123b-24b (emphasis added).

14

having the concierge bring the walker to her, place it in her car trunk, and remove it for her when she returned; and leaving the walker at her designated parking space in the garage. However, the owner rejected all these alternatives.

The United States District Court dismissed the owner's complaint for failing to plead facts to show necessity under the Fair Housing Act. The Third Circuit affirmed and held that the statute's necessity element "requires that an accommodation be essential, not just preferable." *Vorchheimer*, 903 F.3d at 107. "The text [of the statute] pegs the necessity to the goal of providing the particular tenant with equal housing opportunity. The object of the statute's necessity requirement is a level playing field in housing for the disabled." *Id*. (quotations omitted). As such, the Court cautioned, one cannot read the term "necessity" to mean "loose, colloquial phrasing," or to "confus[e] our wants with our needs." *Id*. at 106. The complaint attached a doctor's letter stating that because the owner needed to minimize her periods of unsupported standing, a rolling walker was a medical necessity for the owner to get from the lobby to and from her apartment. *Id*. at 112. All four of the association's proffered alternatives, however, would satisfy these medical needs.[12] *Id*.

*Vorchheimer* involved an accommodation request regarding use of the common areas of an apartment building. By contrast, here, the Rockers asked for an accommodation to make their family home accessible for their disabled child. To provide G.R. with a "level playing field in housing," G.R. is entitled to access both floors of his home, not just the first floor. *Vorchheimer*, 903 F.3d at 107. That the

---

[12] The Third Circuit cautioned that its holding does not raise or shift the pleading requirements or burden of proof for housing-discrimination claims by requiring plaintiffs "to hypothesize alternatives, let alone to preempt hypotheticals." *Vorchheimer*, 903 F.3d at 111. The unit owner in *Vorchheimer* specifically pleaded the four alternative accommodations in her complaint, which allowed the District Court to consider them in ruling on a motion to dismiss. *Id*.

15

expansion may also accommodate the addition of another child to the family is irrelevant to whether the accommodation will serve a therapeutic purpose for G.R.

In sum, the record established that a second-floor addition was necessary to provide G.R. with an equal opportunity to use and enjoy his family home. The Zoning Board erred in holding otherwise.

## II. Authority to Condition a Reasonable Accommodation

The Rockers argue, next, that the Zoning Board's imposition of a condition on the grant of their application violated the Fair Housing Act. The Township had the burden of proving that the second-floor reconfiguration was unreasonable, *Carunchio*, 237 A.3d at 1197, and it did not meet this burden. It did not show the second-floor use would undermine the zoning scheme or impose undue financial or administrative burdens on the Township. Rockers Brief at 47 (citing *Southeastern Community College v. Davis*, 442 U.S. 397, 412-13 (1979)). The Township, which referred the Rockers' accommodation request to the Zoning Board with the recommendation that it be approved, did not participate in the Zoning Board hearing. Because the Zoning Board has found that the first-floor accommodation was reasonable, "it cannot logically conclude that a second story on top of that expansion is somehow unreasonable." Rockers Brief at 49. The Rockers contend the Zoning Board's decision limits G.R. to the use of only the first floor of his home, while his siblings can use all three floors. As such, the Zoning Board has denied him the equal opportunity to use and enjoy his home, which is the "very core" of what the Fair Housing Act aims to protect. Rockers Brief at 24.

Even assuming that the Zoning Board has authority to condition the grant of an accommodation to the first floor of the family home, the Rockers argue that the Zoning Board erred. The record was devoid of evidence that using the

16

second story of the addition would be unreasonable because it would be detrimental to public health, safety, or welfare. Where a structure has been allowed to exceed the horizontal restrictions in a zoning ordinance, the structure may be expanded vertically, so long as it satisfies the height restrictions in the zoning ordinance. *Nettleton v. Zoning Board of Adjustment of City of Pittsburgh*, 828 A.2d 1033 (Pa. 2003).

The Zoning Board counters that the Rockers have waived this last argument. The Zoning Board argues that because it evaluated the Rockers' reasonable accommodation request under the Fair Housing Act, the Rockers cannot raise "traditional zoning standards." Zoning Board Brief at 31. Even so, the record testimony of the neighbors on the impact of the encroachment onto their adjacent property supports the condition imposed. The Zoning Board further contends that *Nettleton* is distinguishable because it involved "preexisting, nonconforming, one-story setbacks." Zoning Board Brief at 34.

We reject the Zoning Board's waiver argument. An issue must be preserved, but a litigant can raise new arguments so long as they relate to the same issue. *See Wert v. Department of Transportation*, 821 A.2d 182, 186 n.9 (Pa. Cmwlth. 2003). Here, the Rockers' arguments all relate to their challenge to the Zoning Board's authority to impose a condition on their accommodation, *i.e.*, a one-story limit.

We conclude that the Zoning Board misapprehended the Fair Housing Act in several ways, which is at the heart of this appeal.

First, the Rockers sought a reasonable accommodation to construct a 476-square-foot addition on the side of their home to allow "their quadriplegic son to *reside at the home* as he transitions into his wheelchair." R.R. 62a (emphasis

17

added).  A municipality must grant an accommodation where necessary to afford an individual an "*equal opportunity to use and enjoy a dwelling*," 42 U.S.C. §3604(f)(3)(B), which is "*any building, structure, or portion thereof which is occupied* as, or designed or intended for occupancy as, a residence[.]"  42 U.S.C. §3602(b) (emphasis added).  Both the first and second floors of the Rockers' house are "occupied" by G.R.'s family as "a residence."  *Id*.  Confining G.R. to the first floor of his family house denies him the ability "to use and enjoy a dwelling," in violation of the Fair Housing Act.  42 U.S.C. §3604(f)(3)(B).

Second, nothing in the Fair Housing Act allows municipalities to impose conditions once it determines there is a necessity for a reasonable accommodation.  The Zoning Board lacked the authority to confine G.R. to the first floor or to micromanage the details of the accommodation request.  Nevertheless, the record contains floor plans for the expanded second floor bathroom and bedroom.  R.R. 56a-59a.  The only question is whether they are reasonable and necessary to G.R.'s ability to "use and enjoy" the second floor of the family residence.  42 U.S.C. §3604(f)(3)(B).  Missing from the Fair Housing Act are any standards by which such conditions to an accommodation could be imposed.  This is because conditions are not contemplated.

In effect, the Zoning Board treated the accommodation request as a variance, where, *inter alia*, the applicant must demonstrate the dimensional relief is the minimum needed to afford relief.  However, in *Carunchio*, 237 A.3d at 1200, this Court established the principle that the standards for a use variance have no application to "an accommodation request" filed under the Fair Housing Act.  By limiting the Rockers accommodation to the first floor of the 476-square-foot

18

addition, as it might condition the grant of a variance or special exception, the Zoning Board erred.

Further, the opponents did not meet their burden of proving that the second-floor reconfiguration was unreasonable. Kenney, who resides next to the Rockers, testified that the Rockers' addition would "hurt [his] property value," and "a house that close" would "cut off the sunlight to [the dining] room." N.T., 8/15/2019, at 57; S.R.R. 57b. The distance from the Rockers' side addition will be 17 feet 10 inches from the side of the Kenneys' house, which exceeds the minimum side yard distance of 8 feet (or 16 feet between houses) required under Section 182-206.C(6)(a) of the Zoning Ordinance. Zoning Board Initial Decision at 5, Finding of Fact No. 6(s); R.R. 16a. The record lacks evidence that the addition, as proposed, will block sunlight to the Kenneys' house or in any way be detrimental to the public health, safety, or welfare.

The second-floor reconfiguration will not extend beyond the footprint of the first floor, which the Zoning Board granted as a reasonable accommodation. Nor will the second floor violate the height restrictions in the Zoning Ordinance. The Rockers did not need, or request, an accommodation from a provision of the Zoning Ordinance that relates to the height of a residential structure.

Even as a matter of state land use law, the second-floor use did not require the Zoning Board's approval. In *Nettleton*, 828 A.2d 1033, the Pennsylvania Supreme Court held that owners of a commercial building were permitted as of right to add two stories to their existing one-story building. The building exceeded the horizontal dimensional requirements of the zoning ordinance but was lawful when constructed. The Supreme Court reasoned, as follows:

> [T]he proposed construction would not further violate the yard
> or setback regulations which, by their terms, controlled only the

19

*horizontal limits of construction*; that is, the permitted outer bounds of the building footprint. Since the proposed vertical construction . . . had no effect on the horizontal limits of the pre-existing construction or the outer bounds of the existing building's footprint, *this Court concluded that no increase in the existing nonconformity was thereby created*.

*Id.* at 1039 (emphasis added).

The Zoning Board distinguishes *Nettleton* by noting its statement that neither *In re Yocum*, 141 A.2d 601 (Pa. 1958), "nor the matter *sub judice* concern applications for variance relief or the entitlement of [the l]andowners to such dispensation." *Nettleton*, 828 A.2d at 1040. This language merely responded to and rejected the objectors' argument that a variance was needed to raise additional floors to a non-conforming building. *Id.* at 1035.[13] The dissent opines that *Nettleton* and *Yocum* are inapposite because in both cases, preexisting, nonconforming uses established the horizonal outer limits of the structures; here, the Rockers' first-floor expansion was established as a reasonable accommodation pursuant to the Fair Housing Act. *Rockers* (Pa. Cmwlth., No. 949 C.D. 2024, filed January 22, 2026) (Cohn Jubelirer, P.J., dissenting), slip op. at 12-13. This is a distinction without difference. *Nettleton* established the principle that once a building footprint, *i.e.*, the horizontal limits of construction, is established as lawful, a vertical addition is allowed as a matter of right. Here, by analogy, because the reasonable accommodation established the horizontal outer limits of the Rockers' construction, an accommodation for the second floor was not needed.

---

[13] The appellants in *Nettleton* cited *Angle v. Zoning Hearing Board of Borough of Dormont*, 475 A.2d 1371 (Pa. Cmwlth. 1984), and *Appeal of Kline*, 148 A.2d 915 (Pa. 1959), both of which involved a variance filed to increase the building footprint, *i.e.*, the horizontal limits of construction. The Supreme Court found *Angle* and *Kline* inapposite because the outer bounds of the building footprint at issue in *Nettleton* had been previously established. *Nettleton*, 828 A.2d at 1040.

20

We conclude that the Board erred in denying the Rockers' proposed second-story accommodation while approving the first-floor accommodation. The application sought an accommodation only from the horizontal dimensional requirements of the Zoning Ordinance. Once it granted that request, the Zoning Board's work was done.

## Conclusion

The Zoning Board had no authority under the Fair Housing Act or under the Pennsylvania Municipalities Planning Code[14] to limit G.R.'s use of his family home to the first floor. The evidence amply supported the reasonableness and necessity of the second-floor reconfiguration, and there was no evidence that the second-floor expansion and reconfiguration were unreasonable. *See Carunchio*, 237 A.3d at 1197.

Given the Zoning Board errors, we reverse the June 24, 2024, order of the trial court affirming the Zoning Board's decision and remand the matter with a direction that the trial court order the Zoning Board to strike its condition and approve the requested accommodation as submitted by the Rockers to the Township.

_____
MARY HANNAH LEAVITT, President Judge Emerita

---

[14] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§10101-11202.

21

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lindsey Rockers and Scott     :
Rockers,     :
          Appellants     :
     :
       v.     :     No. 949 C.D. 2024
     :
Haverford Township Zoning     :
Hearing Board and Haverford     :
Township     :

## **O R D E R**

AND NOW, this 22nd day of January, 2026, the order of the Court of Common Pleas of Delaware County, dated June 24, 2024, in the above-captioned matter, is REVERSED.  The matter is REMANDED to the Court of Common Pleas of Delaware County to enter an order directing the Haverford Township Zoning Hearing Board to strike its condition and approve the requested accommodation as submitted by Lindsey and Scott Rockers to Haverford Township.

Jurisdiction relinquished.

_____
MARY HANNAH LEAVITT, President Judge Emerita

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lindsey Rockers and Scott Rockers, :
                      Appellants :
                                 :
            v.                   :   No.  949 C.D. 2024
                                 :   Argued:  June 3, 2025
Haverford Township Zoning Hearing :
Board and Haverford Township     :


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
          HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE MARY HANNAH LEAVITT, Senior Judge


OPINION NOT REPORTED


DISSENTING OPINION BY
PRESIDENT JUDGE COHN JUBELIRER          FILED:  January 22, 2026


        "[T]o end the unnecessary exclusion of [disabled] persons from the
mainstream of America," the federal Fair Housing Amendments Act of 1988
(FHAA)[1] requires municipalities "to make reasonable accommodations by changing,
waiving or making exceptions in zoning rules, policies, practices or services, when
such accommodations are necessary to afford the [disabled] persons the same
opportunity to use and enjoy a dwelling as those without disabilities."  *Evans
v. Zoning Hearing Bd. of Borough of Spring City*, 732 A.2d 686, 693 (Pa. Cmwlth.

---

[1] 42 U.S.C. §§ 3601-3631.  The FHAA refers to discrimination based on "handicap"
instead of "disability."  *See* 42 U.S.C. § 3604(f)(1)(B).  "Disability scholars, however, generally
prefer the term 'disability' to handicap, and the Americans with Disabilities Act . . . , 42 U.S.C.
§§ 12101-12213 . . . , reflects that preference."  *Kennedy House, Inc. v. Phila. Comm'n on Hum.
Rels.*, 143 A.3d 476, 482 n.6 (Pa. Cmwlth. 2016) (citation omitted).  Therefore, this Court generally
"use[s] 'disability' instead of handicap when possible."  *Id.*

1999). Nevertheless, the FHAA does not "require the municipalities to extend a preference to the [disabled] or put them in a privileged position, as opposed to affording them an equal opportunity." *Id.* at 694. Nor does the FHAA "give [disabled] persons a carte blanche permission to determine where and how they would live in disregard of the zoning requirements." *Id.* Rather, the FHAA requires plaintiffs to establish that "the requested accommodation is necessary to afford [disabled] persons an equal opportunity to use and enjoy a dwelling." *Carunchio v. Swarthmore Borough Council*, 237 A.3d 1183, 1197 (Pa. Cmwlth. 2020) (citation omitted). Because the Majority upsets this careful balance the FHAA strikes between the rights of the disabled and the prerogative of municipalities over land use and zoning, I respectfully dissent.

## I.

Relevantly, the FHAA makes it unlawful "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of . . . a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available." 42 U.S.C. § 3604(f)(1)(B). Discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). In determining reasonable accommodation cases under the FHAA, the courts of this Commonwealth use a burden-shifting framework adopted by the United States Court of Appeals for the Third Circuit in *Lapid-Laurel, L.L.C. v. Zoning Board of Adjustment of the Township of Scotch Plains*, 284 F.3d 442 (3d Cir. 2002). *Carunchio*, 237 A.3d at 1197. Pursuant to this framework, "the plaintiff bears the initial burden of showing that the requested accommodation is necessary

to afford [disabled] persons an equal opportunity to use and enjoy a dwelling, at which point the burden shifts to the defendant to show that the requested accommodation is unreasonable." *Id.* (quoting *Lapid-Laurel*, 284 F.3d at 457). Only the necessity element is at issue in the case at bar.

**A.**

Whether a requested accommodation is necessary is a fact-dependent inquiry. *Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 109 (3d Cir. 2018).[2] Here, the record establishes the following facts.

Lindsey and Scott Rockers (together, Rockers) own and reside at a three-story house located in Haverford Township with their five children. In July 2019, the Rockers, pro se, filed a variance application with the Haverford Township Zoning Hearing Board (Board), seeking to construct a two-story addition to the side of their house and install a ramp compliant with the Americans with Disabilities Act of 1990 (ADA).[3] The Rockers explained that they planned to expand their house to make the "ground floor" more accessible for their disabled son, G.R., and to increase the overall size for their large, growing family. (Application at 2.)

At the first hearing before the Board, Mrs. Rockers explained that G.R. cannot walk, sit up, or talk because of choreoathetoid cerebral palsy. Consequently, G.R. "will always be in a very large power chair with head-to-toe orthopedic support," which he will control "with a switch next to the side of his head" because of his limited fine motor control. (Supplemental Reproduced Record (S.R.R.) at 7b.) G.R. thus needs "wide, open spaces to be able to operate his power chair and access the different points of [the] home." (*Id.* at 8b.)

---

[2] Although not binding on this Court, the pronouncements of lower federal courts are persuasive when interpreting federal statutes. *See In re Stevenson*, 40 A.3d 1212, 1221 (Pa. 2012).
[3] 42 U.S.C. §§ 12101-12213.

To provide more space, the Rockers plan to construct the following. Starting with the first floor, the Rockers will renovate the existing enclosed porch into an office and, eventually, a bedroom for G.R. when they are no longer able to carry him up and down the stairs. Additionally, the Rockers will expand the kitchen, create an ADA-accessible bathroom and shower, and create a four-foot-wide, ADA-accessible hallway to connect the entire floor. As for the second floor, the Rockers will add a fourth bedroom and expand the existing bathroom to allow G.R. to remain in his existing living arraignments for as long as possible before they are forced to relocate his bedroom to the first floor. Mrs. Rockers testified that they plan to construct the new bedroom because the Rockers were expecting their fifth child.

After the first hearing, the Rockers retained counsel and reframed their request from a variance to a reasonable accommodation under the FHAA. Thereafter, Mrs. Rockers testified that G.R. currently slept on the second floor of the house. The Rockers' goal is to keep G.R. on the second floor for a minimum of four more years because of his medical condition and to remain in close proximity to his family at night. That way, Mrs. Rockers testified, the Rockers are able to closely monitor G.R. from their third-floor bedroom, which leads directly into G.R's existing room, and respond quickly to any medical emergency. However, the plans submitted to the Board and contained in the record do not reflect that stairs from the Rockers' third-floor bedroom lead into G.R.'s second-floor bedroom.

To keep G.R. upstairs as long as possible, Mrs. Rockers testified that the proposed second-floor addition would include a larger bathroom and bedroom. The Rockers plan to expand the bathroom to provide more space and an ADA-accessible bathtub because it is increasingly difficult to safely bathe G.R. The Rockers also plan to enlarge G.R.'s bedroom to accommodate his medical bed

and various medical equipment. Although "he will eventually benefit from having a larger bedroom and bathroom in a quiet area on the first floor of his family's home," G.R.'s pediatrician explained that "[i]n the interim[,] it is important that his upstairs living space fit his new medical [bed] and bath chair with room for caregivers to maneuver." (Reproduced Record at 64a.) However, the plans submitted to the Board and contained in the record depicting the enlarged bedroom are inaccurate because the submitted plans are "actually not how [the Rockers] plan on doing it." (S.R.R. at 124b.) Rather, the Rockers plan on further expanding the bedroom and rearranging where the closet will be located to provide the room necessary to store G.R.'s medical equipment.

Mrs. Rockers further testified that the first-floor addition is necessary because the Rockers need to relocate G.R.'s bedroom downstairs in the near future when they can no longer carry him up and down the stairs. When asked about whether the Rockers could install a chair lift to alleviate this problem, however, Mrs. Rockers explained that they did not consider it. Even if they installed a chair lift, the Rockers did not know whether they "would be able to make the second floor truly accessible" for G.R. because "he would not be able to transfer himself from the chair to the ramp and that would limit independent access to his bedroom and bathroom." (*Id.* at 145b.) Moreover, the Rockers did not know whether G.R. "would be able to safely navigate around in a wheelchair [on the second floor] with the top of the stairs and how narrow the hallways are and how narrow the doorways are." (*Id.*)

**B.**

Based on the foregoing, the Board granted the requested first-floor accommodation but denied the second-floor accommodation, reasoning that the Rockers did not prove that the second-floor accommodation is necessary for G.R. to

use and enjoy their house. Although unaddressed by the Majority, substantial evidence supports the Board's conclusions.

To establish necessity, the plaintiff must show that "without the accommodation, the [disabled person] will be denied an equal opportunity to obtain the housing of [their] choice." *Kennedy House, Inc. v. Phila. Comm'n on Hum. Rels.*, 143 A.3d 476, 486 (Pa. Cmwlth. 2016) (citing federal cases). While undefined by the FHAA, courts have defined "equal opportunity" as "giv[ing] [disabled] individuals the right to choose to live in single-family neighborhoods, for that right serves to end the exclusion of [disabled] individuals from the American mainstream." *Lapid-Laurel*, 284 F.3d at 459 (citation omitted). The plaintiff can establish that a requested accommodation will provide equal housing opportunities by showing that the accommodation is financially necessary or serves a therapeutic purpose, i.e., "ameliorate[s] an effect of the [disability]." *Id.* at 461. Importantly, the plaintiff must establish how the requested accommodation is required to provide equal housing opportunities for the person's particular disabilities. *Vorchheimer*, 903 F.3d at 107-09. Because the "necessity element requires that an accommodation be essential, not just preferable," the plaintiff's burden "is a demanding legal standard." *Id.* at 107.

Here, substantial evidence supports the Board's conclusion that the Rockers did not establish that the second-floor accommodation is necessary to afford G.R. an equal housing opportunity. To start, although the record establishes that it is medically essential to keep G.R. in close proximity to the Rockers in case of an emergency, the record does not establish how the second-floor addition as requested is required to meet this need. Mrs. Rockers testified that the second-floor addition is necessary because the Rockers are able to closely monitor G.R. and immediately

RCJ - 6

intervene during an emergency from their third-floor bedroom as it leads directly into G.R.'s existing second-floor bedroom. However, the plans contained in the record directly contradict Mrs. Rockers' testimony, showing instead that the stairs from the third-floor bedroom do not directly go into G.R.'s bedroom but lead into the second-floor hallway. Furthermore, despite their definitive plan to relocate G.R.'s bedroom to the first floor, the record does not reflect that the Rockers intend to relocate their bedroom to the second floor and uniquely configure the second floor to allow direct access to G.R.'s first-floor bedroom for emergencies.

The record also does not establish how the second-floor addition is essential, as opposed to preferable, to accommodate G.R.'s needs as to his bedroom and the bathroom. As stated above, the Rockers intend to relocate G.R.'s bedroom to the first floor, which is large enough to accommodate his medical bed and equipment. The Rockers further plan to create an ADA-accessible bathroom and shower on the first floor. Therefore, the record does not evidence that the second-floor additions are essential when the approved first-floor additions already ameliorate the effects of G.R.'s disability.

Finally, record evidence cuts against the Rockers' assertion that the second-floor addition is necessary for G.R. to use and enjoy his house. The Rockers contend that without the proposed addition, G.R. will not be able to use or enjoy the second floor of the house like the rest of his family. The Rockers further contend that the Board's decision forced them to place G.R. in a residential institution, depriving him of an equal opportunity to use and enjoy their house. Regardless of the Board's decision, however, G.R. would not be able to use or enjoy the second floor once the Rockers are unable to carry him up and down the stairs. Even if the Rockers installed a chair lift, which they testified they did not contemplate installing, the Rockers

explained that G.R. likely could never "safely navigate around in a wheelchair [on the second floor] with the top of the stairs and how narrow the hallways are and how narrow the doorways are." (S.R.R. at 145b.) Consequently, the Rockers testified that the second floor likely will never be accessible for G.R. Additionally, the Board approved the first-floor addition, and the Rockers intend to create a first-floor bedroom and bathroom for G.R., which would allow G.R. to remain in his home. Therefore, the record establishes that the Board did not exclude G.R. from or give him less of an opportunity to live in the Rockers' house.

In summary, proving necessity under the FHAA "is a demanding legal standard." *Vorchheimer*, 903 F.3d at 103. It "requires that an accommodation be essential, not just preferable." *Id.* Here, substantial evidence supports the Board's conclusion that the Rockers did not meet their demanding necessity burden for the requested second-floor accommodation. Accordingly, contrary to the Majority, the Court is constrained to affirm the Board.[4] *See Dowds v. Zoning Bd. of Adjustment*, 242 A.3d 683, 692 n.10 (Pa. Cmwlth. 2020) (explaining that this Court may conclude that a zoning hearing board erred "only where the zoning board's findings are not supported by substantial evidence").

## C.

To circumvent that the Board's decision is supported by substantial evidence, the Majority concludes that the Board committed a reversible error by capriciously disregarding unrefuted evidence contrary to its decision. A review of the Board's

---

[4] Because of the fact-sensitive nature of necessity determinations under the FHAA, different circumstances may require different results. *Cf. Central Dauphin Sch. Dist. v. Hawkins*, 286 A.3d 726, 744 n.13 (Pa. 2022) (refusing to "foreclose on different circumstances yielding different results" because of the fact-sensitive nature of the Right-to-Know Law, Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104, and the federal Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g).

decision, however, reveals that the Board did not capriciously disregard any evidence but, albeit inartfully, concluded the evidence proffered by the Rockers did not establish necessity as to the second-floor addition.

A zoning hearing board capriciously disregards evidence "only when [it] deliberately ignores relevant, competent evidence." *Taliaferro v. Darby Twp. Zoning Hearing Bd.*, 873 A.2d 807, 814 (Pa. Cmwlth. 2005). "Where substantial evidence supports an agency's findings, and the findings in turn support the conclusions, it should remain a rare instance where an appellate court disturbs an adjudication based on capricious disregard." *Id.* at 815. In the instant case, the Majority agrees with the Rockers' argument that the Board capriciously disregarded Mrs. Rockers' testimony and the letter from G.R.'s pediatrician, which in their view establishes the proposed second-floor accommodation is necessary for G.R. to use and enjoy the home. Specifically, the Majority and the Rockers take issue with the following finding of fact from the Board's July 21, 2023 decision:

> Additionally, the record is devoid of testimony establishing how the second floor additional bedroom, bathroom, corridor, linen closet and revisions to the stairs to [the Rockers'] bedroom on the third floor are necessary for [G.R.] to use and enjoy the home, especially when [G.R.] is to be relocated to the first floor, as it was becoming increasingly hard for [the Rockers] to carry him to the second floor.

*Rockers*, slip op. at 7-8, 12 (alterations in original).

However, when placed in context, a review of the Board's decision shows that the Board did not deliberately ignore the testimony and evidence provided by the Rockers regarding the proposed second-story accommodation, as evidenced by the Board's summary of and citation to the record evidence. By definition, therefore, the Board did not capriciously disregard the testimony and evidence proffered by the Rockers. *See Taliaferro*, 873 A.2d at 816. Rather, the Board considered the record

evidence and found that it did not establish that the second-floor accommodation is necessary for G.R. to use and enjoy the home. The Board did not deliberately ignore record evidence in reaching its conclusions simply because it did not agree with the Rockers' position that the evidence supported a finding of necessity. It is the Board's function "to weigh the evidence before it," and "this Court may not substitute its interpretation of the evidence for that of the [Board]." *Id.* at 811. Because the Board's decision is supported by substantial evidence, this Court cannot conclude that the Board capriciously disregarded evidence simply because it inartfully used the phrase "devoid of testimony." *See id.*

## II.

In addition to concluding that the Board erred in reaching its necessity decision, the Majority opines that the Board misapprehended the FHAA by denying the requested second-floor accommodation while simultaneously granting the first-floor accommodation. In reaching this conclusion, the Majority misconstrues the procedural history of this matter and the caselaw of our Supreme Court.

To start, the Majority misconstrues the procedural history of this matter and the Board's decision on appeal to this Court. The Rockers argue the Board erred by placing a condition on its approval of their reasonable accommodation request by limiting approval to the first floor of their house. The Majority agrees, concluding that the Board has no authority under the FHAA to condition the approval of a reasonable accommodation request or otherwise "micromanage the details of the accommodation request." *Rockers*, slip op. at 18. This conclusion does not reflect the procedural history of this case.

On January 14, 2020, the Board issued an initial decision in this matter, expressly conditioning its approval of the Rockers' reasonable accommodation

RCJ - 10

request to only the first floor of their house.  The Rockers appealed the 2020 decision to the Court of Common Pleas of Delaware County (trial court).  Because the initial decision did not reflect that the Board considered the FHAA's legal standards, the trial court remanded for the Board to issue a supplemental decision evidencing the proper analysis for a reasonable accommodation request under the FHAA. Following remand, the Board issued a supplemental decision on July 21, 2023, wherein the Board did not condition its approval of the first-floor accommodation but explicitly denied the requested second-floor accommodation.  Thus, whether the Board may condition the grant of a reasonable accommodation request under the FHAA is irrelevant to the case at bar because the Board ultimately did not condition its approval but outright denied the Rockers' requested second-floor accommodation on the basis that the Rockers did not prove the accommodation is necessary for G.R. to use and enjoy the house.  Accordingly, the Board did not err in this regard.

The Majority further misconstrues our Supreme Court's decisions in *Nettleton v. Zoning Board of Adjustment of City of Pittsburgh*, 828 A.2d 1033 (Pa. 2003), and *In re Yocum*, 141 A.2d 601 (Pa. 1958).  The Rockers cite *Nettleton* and *Yocum* for the proposition that the Board must approve the requested second-floor accommodation because it is a vertical extension of the approved first-floor accommodation and does not further encroach into the side yard setback.  The Majority concurs, opining that "*Nettleton* established the principle that once a building footprint, i.e., the horizontal limits of construction, is established as lawful, a vertical addition is allowed as a matter of right."  *Rockers*, slip op. at 20 (italics removed).  Once the Board granted the first-floor accommodation setting "the horizontal outer limits of the Rockers' construction, an accommodation for the

second floor was not needed." *Id.* Simply, the Majority concludes, the "Board's work was done." *Id.* This is not so.

*Nettleton* and *Yocum* instruct that the owners of preexisting, nonconforming uses and structures are afforded constitutional protections which render the relevant municipal authority "without power to compel a change in the nature of the use, or prevent the owner from making such necessary additions to the existing structure as were needed to provide for its natural expansion so long as such additions would not be detrimental to the public welfare, safety and health." *Nettleton*, 828 A.2d at 1037 (quoting *Yocum*, 141 A.2d at 604). These constitutional protections are limited to preexisting, nonconforming uses or structures. *Id.* at 1039-41 (explaining that per *Yocum*, it is only where "the proposed vertical construction . . . ha[s] no effect on the horizonal limits of the **pre-existing** construction or the outer bounds of the **existing** building's footprint" that "the landowners must be granted leave to construct such a vertical addition" because there is "no increase in the **existing nonconformity**" (emphasis added)); *Yocum*, 141 A.2d at 605-06 (concluding that "[t]he allowance of this building permit is neither the grant of a 'variance' **nor an 'exception'** nor an extension of the use of these premises," but "rather the grant of a logical, reasonable and natural structural change in the building which neither increases any **nonconformity** of its use nor violates any provision of the zoning ordinance and in no[]wise affects the general welfare of the neighborhood or of the adjoining property owners" (emphasis added)). Therefore, landowners seeking an exception to a zoning ordinance are not entitled to the constitutional protections that permit the vertical extension of preexisting, nonconforming buildings. *Nettleton*, 828 A.2d at 1039-40; *Yocum*, 141 A.2d at 604-06.

Here, the Rockers are not seeking to vertically extend a preexisting, nonconforming use or structure; indeed, the Rockers have no preexisting, nonconforming use, structure, or building upon which to naturally expand. *See* HAVERFORD TWP., DEL. CNTY., PA., ZONING ORDINANCE § 182-106 (2019) (defining "nonconforming building" and "nonconforming structure"). Rather, the Rockers are seeking exceptions from various provisions of Haverford Township's zoning ordinance to construct a two-story addition to their house as a reasonable accommodation under the FHAA. *See Evans*, 732 A.2d at 693 (explaining that the FHAA requires municipalities "to make reasonable accommodations by changing, waiving or making exceptions in zoning rules, policies, practices or services" when proven necessary). Accordingly, *Nettleton* and *Yocum* are not applicable to this case because the Rockers are requesting exceptions from a zoning ordinance pursuant to the FHAA—not a natural expansion of a preexisting, nonconforming use or structure. *See Nettleton*, 828 A.2d at 1039-40; *Yocum*, 141 A.2d at 604-06. Consequently, *Nettleton* and *Yocum* cannot form the basis upon which to conclude that the Board erred in denying the requested second-floor accommodation because it approved the first-floor accommodation.

Moreover, the Board did not run afoul of the FHAA by granting the first-floor accommodation while denying the second-floor accommodation. The FHAA does "not [] give [disabled] persons a carte blanche permission to determine where and how they would live in disregard of the zoning requirements." *Evans*, 732 A.2d at 694. "Nor does the FHAA require the municipalities to extend a preference to the [disabled] or put them in a privileged position, as opposed to affording them an equal opportunity." *Id.* Rather, the plaintiff must "show[] that the requested accommodation is necessary to afford [disabled] persons an equal opportunity to use

and enjoy a dwelling." *Carunchio*, 237 A.3d at 1197. Municipalities thus need not grant the exact accommodation requested but only what is reasonable when proven necessary.

To conclude otherwise, as the Majority does, upsets the FHAA's balancing of the rights of the disabled and the prerogative of municipalities over land use and zoning. Under the Majority's conclusion, for example, a municipality must approve a multi-story addition even if the upper floors are entirely unrelated to the disabled person's needs simply because the plaintiff established that the first-floor addition is necessary and the upper floors do not extend beyond the horizontal footprint of the first floor. As applied here, the Rockers only needed to establish that the first-floor is necessary for G.R. to use and enjoy the home to receive automatic approval for second- and third-floor additions even if the record establishes that these additions are purely for the remainder of the family and that G.R. would never use the upper floors. This is not what the FHAA contemplates. *See Evans*, 732 A.2d at 694.

\* \* \*

In sum, because substantial evidence supports the Board's conclusion that the Rockers did not establish that the second-floor accommodation is necessary for G.R. to use and enjoy their house, I would maintain the careful balancing of the FHAA and affirm the Board. Therefore, while I am empathetic to the Rockers' position, I must respectfully dissent.

_____
RENÉE COHN JUBELIRER, President Judge